No.  90-362

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FRANZ E. LINDEN and PATRICIA
K. LINDEN,

      Plaintiffs and Appellants,

  v.

JASON D. HUESTIS,

      Defendant and Respondent.

**FILED**

MAR - 6 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas L. McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          James R. Walsh, Smith, Walsh, Clarke & Gregoire,
Great Falls, Montana

      For Respondent:

          Joseph R. Marra, Marra, Wenz, Johnson & Hopkins,
Great Falls, Montana

Submitted on briefs:  01/24/91
Decided:  03/06/91

Filed:

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

The plaintiffs, Franz E. Linden and Patricia K. Linden sued the defendant to recover damages resulting from injuries that Franz Linden allegedly sustained when the motor vehicle he was operating was struck from behind by the vehicle being operated by the defendant. The defendant admitted liability for the collision, but denied that the plaintiffs were damaged to the extent they claimed. Following a jury trial, a verdict was returned finding that the plaintiffs were not damaged as a result of the defendant's negligence. Judgment was entered for the defendant. Plaintiffs' motion for a new trial was denied. From that judgment and order, the plaintiffs appeal. We reverse.

Plaintiffs raise the following issues on appeal:

1. Was there sufficient evidence to support a verdict for the defendant?

2. Should the verdict for the defendant be set aside because of juror misconduct?

3. Did the District Court err when it admitted testimony from the defendant's expert to the effect that plaintiff was motivated by considerations of secondary gain?

4. Did the District Court err when it admitted evidence that plaintiff had consumed alcoholic beverages prior to the collision in question even though there was no allegation that plaintiff's conduct contributed to a cause of the accident?

5. Did the District Court err when it admitted evidence of the price plaintiff was asking for the sale of his dental practice?

6. Do comments by defense counsel which may have suggested that the defendant was uninsured require reversal?

7. Did the District Court err when it instructed the jury on a portion of the law pertaining to Patricia K. Linden's retirement benefits?

## Summary of the Facts

On February 12, 1988, the plaintiff, Franz Linden, was operating his motor vehicle in an easterly direction on Tenth Avenue South in Great Falls. After stopping for a red light and before he could resume movement, he was struck from behind by the vehicle operated by the defendant. Plaintiff filed his complaint against the defendant on December 21 of that same year. He claimed that he had been injured, incurred medical expense and that his earning capacity was impaired as a result of his injury.

Defendant originally denied liability and alleged that the plaintiff had been contributorily negligent. However, he later amended his answer and admitted that his negligence caused the collision. He also withdrew his affirmative defense alleging that plaintiff was contributorily negligent.

The complaint was also amended by adding Patricia K. Linden, who claimed damages for loss of consortium.

In the Pretrial Order, plaintiffs alleged that Dr. Linden had sustained muscular, vertebral and intervertebral disc injuries in the area of his neck. They also alleged that as a result of those injuries, he was forced to sell his dental practice and had, therefore, been unemployed since July 1, 1989. The defendant

3

conceded that Dr. Linden may have sustained a "minor whiplash injury" but contended that the damages plaintiffs claimed were far in excess of the actual damages they sustained.

At trial, Franz Linden testified that he had experienced neck symptoms since the day following his collision with the defendant and that his symptoms were aggravated by the awkward position in which he was forced to work as a dentist. After working in a great deal of discomfort for 16 1/2 months, he testified that he quit the practice of dentistry on June 30, 1989 and sold his practice to another dentist on August 15 of that year. Plaintiffs called an orthopedic surgeon and two neurosurgeons who had treated or examined Franz Linden for his neck complaints. They testified in person or by deposition and gave various opinions regarding the nature of his injury. It was described as a soft tissue injury, a herniation of an intervertebral cervical disc, and an injury to a cervical facet joint.

The only other medical witness was the defendant's consultant, Dr. Peter Fisher, from Seattle, Washington. His testimony was internally inconsistent. During direct examination, he expressed the opinion that plaintiff may have sustained a neck sprain when his vehicle was struck by the defendant's vehicle. However, during cross-examination, he expressed the opinion that Franz Linden was uninjured as a result of his collision with the defendant.

After four days of trial, the jury returned its verdict finding that plaintiffs were not damaged as a result of the defendant's admitted negligence.

4

After judgment was entered, plaintiffs filed their motion for a new trial and in support of that motion submitted the affidavit of Jack Stimac, one of the jurors. Mr. Stimac stated in his affidavit that during deliberations, the jury discussed a television show which had been broadcast the night before and which indicated that many dentists were selling their practices because they were having a difficult time making money. He also stated that one of the jurors told the other jurors that she had seen the plaintiff playing golf in Great Falls during the summer of 1989. The testimony at trial had been that he had chosen not to play golf in Great Falls during that summer because of the discomfort he experienced from his injuries.

We reverse the judgment entered for the defendant and the District Court's order denying plaintiffs' motion for a new trial based upon the inadmissible testimony of Peter Fisher, M.D., to the effect that Franz Linden's complaints of pain were motivated by considerations of "secondary gain." As a result, we remand this case to the District Court for a new trial. Therefore, we do not find it necessary to arrive at a decision regarding the sufficiency of this jury's verdict or to decide whether this verdict should be reversed based on juror misconduct.

Presuming, however, that some of these same evidentiary and instructional issues which are raised on appeal will again be issues during retrial, we will discuss those issues for the guidance of the parties and the District Court.

I.

5

Peter Fisher has been a doctor of medicine since 1948. He has specialized training in internal medicine and in a field that he refers to as "automotive medicine," which he describes as the evaluation of highway injuries. He was engaged in the private practice of medicine in Seattle for 24 years. However, since 1980, his practice has been limited to serving as a consultant to attorneys regarding injuries sustained from automobile accidents. He has testified on over 200 occasions.

Dr. Fisher was called as an expert witness by the defendants during the trial of this case. He had not examined nor treated the plaintiff and in fact had never seen nor met the plaintiff until he walked in the courtroom to testify. Any information he possessed about the plaintiff or his physical condition was based upon a review of other doctors' depositions, medical records, auto repair bills, photographs of the vehicles, police reports, and various forms of radiological film taken of the plaintiff's spine. He gave his opinion regarding the extent of the impact when the defendant's vehicle collided with the plaintiff's vehicle and he gave his opinion regarding the type of injury plaintiff may possibly have sustained from that impact. He also testified regarding various other medical problems in Franz Linden's medical history which would have an impact on his future health and life expectancy.

Prior to trial, plaintiffs filed a motion in limine asking the court to rule in advance of trial that Dr. Fisher would not be allowed to testify that there were economic reasons for Franz

Linden's symptoms until after a foundation had been laid, and plaintiffs' attorney was given an opportunity to object to that testimony. Apparently, although the record on this point is unclear, plaintiffs' motion in limine was denied.

Dr. Fisher expressed the opinion that plaintiff's present complaints were a result of "chronic pain syndrome." When asked during direct examination to describe what he meant by chronic pain syndrome he explained that:

> Chronic pain syndrome is a condition generally recognized by doctors of continuation of pain, long after it would seem logical that it would occur . . . <u>associated with what's called secondary gain on either a conscious or subconscious level where it serves a purpose to help us with work, home or life or other things. It's one of the biggest problems we have today, chronic pain syndrome, because it's not physical injury. It's complaints of pain not explainable any longer on the trauma.</u> (Emphasis added.)

When asked during cross-examination what he meant by "secondary gain," he stated,

> I meant secondary gain being changes in our lifestyle, things we feel capable of doing on a conscious level which means they're doing it purposefully or more commonly on a subconscious level as part of our symptom complex that suddenly solves some of life's problems, sex, marriage, work, money--I was giving the litany of the usual things, <u>not indicating they specifically apply here</u>.

> But the secondary gain is involved in litigation and being waited on, and its the I've got a headache for sex and whatever. Its a pretty common scenario. (Emphasis added.)

Rule 702, M.R.Evid. regarding testimony by experts provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue, a witness qualified

as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

By education, training and experience, Dr. Fisher was qualified as a medical expert. As such he was qualified to explain to the jury what kind of objective signs or subjective symptoms are associated with various injuries. Based upon his review of the plaintiff's records, he was qualified to give his opinion that those signs and symptoms were not present in this case and that, therefore, plaintiff was not at the present time suffering from an injury. However, he was no more qualified than anyone on the jury to speculate about the plaintiff's possible motivation for making complaints which Dr. Fisher felt could not be substantiated by his physical findings. This is especially true where, as here, Dr. Fisher had never met nor talked to plaintiff; and, when this conclusion was not suggested by any of the health care providers whose records and testimony he reviewed. He was not qualified as a human polygraph. His testimony in this regard was not an appropriate expert opinion.

We have had one prior occasion to consider opinion testimony regarding "secondary gain." In Dahlin v. Holmquist (1988), 235 Mont. 17, 766 P.2d 239, this Court was presented with facts similar to those which are present in this case. The plaintiff in that case also claimed to have sustained a neck injury as a result of an automobile accident and prior to trial moved in limine to exclude all testimony regarding "secondary gain" by Dr. James Lovitt. The trial court overruled the motion in limine and

8

admitted that testimony. We remanded that case for a new trial for the following reasons:

> . . . In this case as in Kuiper v. Goodyear Tire (1983), 207 Mont. 37, 673 P.2d 1208, the failure of the trial court to exclude such evidence prejudicial to the defendant permitted the jury "to indulge in improper speculation and guesswork." Kuiper, 673 P.2d at 1217. The failure to exclude all secondary gain testimony constituted an error of sufficient magnitude to warrant a new trial. Consequently, the District Court erred in denying plaintiff's motion for a mistrial.

Dahlin, 766 P.2d at 241.

In this case, liability was admitted and Dr. Fisher's testimony was the only testimony which questioned Franz Linden's injury. Therefore, his unqualified opinion regarding secondary gain did prejudice the jury and in effect plaintiffs' right to a fair trial. For that reason alone this case is remanded to the District Court for a new trial.

On appeal, the plaintiffs have raised several evidentiary and instructional issues which we will discuss for the guidance of the parties and the District Court during retrial of this case.

II.

During the cross-examination of the plaintiff, Franz Linden, the following dialogue was recorded:

> Q. (By Mr. Joseph Marra) Now, would it be fair to say that you weren't particularly alert to what was happening because you had been drinking before the accident occurred?
>
> (Mr. Walsh) Objection, Your Honor. This is totally irrelevant.
>
> THE COURT: What is the relevancy of this question?

9

MR. JOSEPH MARRA:  I'll show you the relevance to see the fact that he didn't know what was going on around him.

MR. WALSH:  Wait a minute here.  That's an argumentative statement, Your Honor, and I request the jury be instructed to disregard that.

MR. JOSEPH MARRA:  And I will apologize for saying it in that way.  I will apologize to you, Dr. Linden.

THE COURT:  The jury is cautioned and instructed not to take into account statements of attorneys and that is to be stricken from the record.

MR. WALSH:  Can we be heard on this outside the jury's presence, Your Honor?  I apologize for this.

THE COURT:  I don't think so.  I want to keep this trial going.  You may proceed.

Q. (By Mr. Joseph Marra):  Had you been drinking before the accident occurred?

MR. WALSH:  Objection as irrelevant.

THE WITNESS:  Yes.

THE COURT:  What is the relevancy of this?

MR. JOSEPH MARRA:  To show his capacity to observe and know what was going on at the scene of the accident, Your Honor.

THE COURT:  Counsel, if you would approach the bench.

(WHEREUPON, a discussion was had at the bench out of the hearing of the jury)

Q. (By Mr. Joseph Marra):  Had you been drinking before the accident?

A.:  Yes.

Q.:  Did you admit in your deposition you had been in a bar with a friend for about an hour and a half before the accident?

A.:  Yes.

Q.:  Who's the friend you were with in the bar?

10

A.:   Gorham Swanberg.

The plaintiff was never asked how much he had had to drink nor was any independent evidence offered in that regard. Plaintiff was never asked what, if any, effect the consumption of alcohol had had on his physical capacities nor was any independent evidence offered in that regard.

In fact, there was no claim at the time of trial nor any evidence offered that plaintiff's operation of his motor vehicle in any way contributed as a cause of his collision with the defendant. The plaintiff's consumption of an unspecified amount of alcohol at some unspecified point in time prior to his collision with the defendant was completely irrelevant to any issue in this case. Therefore, during any retrial of this case, no further questioning nor comments from defense counsel regarding plaintiff's consumption of alcohol should be permitted, unless some prior foundation to establish its relevance is laid outside the presence of the jury.

III.

Plaintiff testified that he practiced dentistry from 1963 until June 30, 1989 and that he would have continued practicing for another 10 to 15 years had it not been for his injury. His attorney represented to the jury during his opening statement that up until the date of his accident, Franz Linden had worked fulltime at his profession.

Plaintiff also testified that the position in which he was forced to work aggravated his neck injury and increased his

11

symptomatology. He was advised by his treating physician in mid-May of 1989 that he would have to discontinue his practice unless he wanted to aggravate his condition. He testified that he had difficulty selling his practice but that he eventually did sell it on August 15, 1989.

During the cross-examination of Dr. Linden, the defendant offered as an exhibit and cross-examined him with a document that he had prepared and sent to various dental schools during his efforts to sell his practice. It included a description of his offices and equipment, the number of patients he served, his gross income for the past two years and a description of his practice. It also included the price plaintiff was asking for the sale of his practice.

Plaintiff objected to the exhibit on the basis that plaintiff's practice was an asset that he was entitled to sell prior to the time he was injured and that the sale price should not be considered by the jury to reduce the damages he claimed for loss of future income. Plaintiff, furthermore, contended that the sale price listed was misleading because it was not the sale price that he eventually received.

Considerations of admissibility are left largely to the discretion of the trial court and should be reviewed only in the event of manifest abuse of discretion. Feller v. Fox (1989), 237 Mont. 150, 151-52, 772 P.2d 842, 844.

In this case the exhibit offered by the defendant did include relevant information. Under the description of his practice in that exhibit Dr. Linden stated:

I have managed to make a good living on a 4-day work week with plenty of time off to "smell the roses." A young, aggressive dentist, I'm sure, could gross over $200,000 in time.

Dr. Linden was seeking over $1 million for future impairment to his earning capacity. His attorney had told the jury that he worked fulltime during his practice. In arriving at an evaluation of his future earning capacity, the jury was entitled to consider that he did not work fulltime; did not consider himself to be an aggressive dentist and took plenty of time off to "smell the roses."

The fact that the asking price was not the price eventually received by Dr. Linden was pointed out during his redirect testimony. The fact that his practice was an asset which should not be used to reduce his damages for lost earning capacity was clear from the court's instructions to the jury. Furthermore, plaintiff's counsel was free to make that argument when discussing damages with the jury.

We find no error in the admissibility of defendant's exhibit regarding plaintiff's asking price for the sale of his dental practice.

IV.

Plaintiffs contend on appeal that efforts by defense counsel to imply to the jury that the defendant was without liability insurance and that either he or his family would be personally

13

responsible for the damages in this case would also justify reversal of the verdict for the defendant.

During his opening statement, the attorney for the defendant told the jury:

> And it would also be in evidence that the Huestises have already paid his medical expenses, which are $1,723.10. And they've paid for all of the repairs to his car, which amount to $1,979.56.

Plaintiffs objected to this statement for the reason that pretrial discovery had disclosed the defendant was covered by a $1 million liability insurance policy and that the damages had neither been paid by the defendant nor his family. The trial court sustained the objection and at the plaintiffs' request, the District Court appropriately instructed the jury that they were to disregard comments by counsel that the defendant or his family had personally paid for plaintiffs' damages.

During closing argument, counsel for the defendant then made the following statement to the jury:

> Jason just happened to be the teenage son of an old and prominent and apparently financially successful family who someone would assume would either pay rather than subject him and themselves to the ordeal and to the embarrassment of a trial.

The plaintiffs again objected to the remarks of defense counsel. The District Court sustained the objection and reminded the jury of its prior instruction.

Based upon our reversal for the reason previously given, we need not determine whether counsel's remarks would warrant reversal in this case. However, during retrial of this case, we admonish both parties to refrain from any further mention of insurance or

14

the absence of liability insurance. In that regard, we wish to draw the attention to counsel to this Court's decision in Sioux v. Powell (1982), 199 Mont. 148, 647 P.2d 861. In that case, we held that:

> . . . The admission of evidence showing that the plaintiff Sioux was not insured was improper and constitutes reversible error. Evidence of the absence of insurance can be as prejudicial as evidence of the presence of insurance . . . .

Sioux, 647 P.2d at 864.

If evidence that an uninsured plaintiff had no insurance constituted reversible error, certainly the suggestion that an insured defendant has no insurance is impermissible. The parties should be guided accordingly in their future remarks to the jury during any retrial of this case.

## V.

The basis for plaintiff's economic damages was that due to his injury, he could no longer continue to practice dentistry and there were no forms of employment available in the Great Falls area in which he could take advantage of his training as a dentist. Furthermore, plaintiffs could not move from the Great Falls area because Patricia Linden was a teacher in the Great Falls school system with 20 years of experience and her seniority was not transferrable. She also testified that if she had to leave her current position sooner than five years from the date of trial, she would lose all of her retirement benefits.

For these reasons, plaintiffs' economist calculated his future projection of lost earnings based upon the difference in what he

could have earned as a dentist and what he could now earn outside of his profession in the Great Falls area.

To counter this evidence, the defendant offered an instruction setting forth a portion of § 19-4-802, MCA. Defendant's proposed instruction no. 67 read as follows:

> All teachers in Montana are covered by the Montana Teachers Retirement System. A teacher's rights are vested and cannot be lost after 5 years of teaching. The annual retirement benefit to which a teacher is entitled is an amount equal to 1/60 of his or her average final compensation multiplied by the number of years of service. Average final compensation is the average of a teacher's compensation earned during the 3 consecutive years which yield the highest average compensation. The normal retirement age is 60.

Plaintiffs objected to the instruction on the basis that it was unsupported by the facts in evidence; on the further basis that it was confusing to the jury; and, that it was not relevant to any issue in the case. The objection on that basis was properly overruled and the instruction was given.

On appeal, plaintiffs concede that instruction no. 67 was a correct statement of the law but argues that it was incomplete because it did not include additional law from the statute which provides that teachers are not eligible for early retirement until they reach the age of 50. Patricia Linden wouldn't have been eligible for early retirement until June 3, 1991. Plaintiffs, on appeal, furthermore state that the instruction was incomplete because it did not set forth the formula which the entire statute includes for reducing the amount of retirement benefits for teachers who retire early.

16

Any objection to instructions cannot be heard on appeal unless it was initially raised with particularity at trial. State Highway Commission v. Beldon (1975), 166 Mont. 246, 250, 531 P.2d 1324, 1327; Salvail v. Great Northern Railway Co. (1970), 156 Mont. 12, 26, 473 P.2d 549, 557; and Rule 51, M.R.Civ.P.

Since the plaintiffs raised the issue of their immobility due to the fact that Patricia Linden would lose all of her retirement benefits, the District Court did not err by instructing the jury on the law that pertains to early retirement. Furthermore, plaintiffs did not object to defendant's instruction no. 67 for a proper reason and the District Court was correct in overruling the plaintiffs' objection.

If during retrial of this case the District Court is again requested to instruct the jury regarding the law that pertains to early retirement and if the plaintiffs propose that that instruction include the elements which the plaintiffs now claim were deleted, then the jury should be instructed on all the legal conditions that pertain to Patricia Linden's early retirement.

This case is reversed and remanded to the District Court for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

17

_John Conway Harrison_

_R. C. McDonough_

_William E. Hunte_

_[signature]_
Justices

18