No. 97-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 216

295 Mont. 528

985 P.2d 734

---

MARK BENJAMIN,

Plaintiff and Appellant,

v.

ERIC TORGERSON,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Anne G. Biby, Bottomly Law Offices; Kalispell, Montana

For Respondent:

Jack L. Lewis (Argued) and Francis X. Clinch (Argued), Jardine,

Stephenson, Blewett & Weaver, P.C.

David F. Stufft, Attorney at Law; Cut Bank, Montana

---

Submitted: April 6, 1999

Argued: October 22, 1998

Decided: September 14, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

- ¶The plaintiff, Mark Benjamin, filed a complaint in the District Court for the Ninth Judicial District in Toole County, in which he alleged that the defendant, Eric Torgerson, had sexually abused him numerous times, and that as a result he suffered psychological damage and mental distress. Following a two-week trial, the jury returned a verdict in favor of Torgerson. Benjamin appeals from the District Court's judgment in favor of Torgerson and Torgerson cross appeals. We affirm the judgment of the District Court.
- ¶The issues on appeal are:
- ¶1. Did the District Court abuse its discretion when it excluded evidence of Torgerson's prior acts?
- ¶2. Did the District Court err by allowing testimony regarding Benjamin's credibility?

## FACTUAL BACKGROUND

  - ¶Eric Torgerson is the former husband of Mark Benjamin's aunt. Torgerson's children are close in age to Benjamin and the two families spent a great deal of time together during Benjamin's childhood.
  - ¶In 1987, Benjamin's parents learned that he had sexually abused younger family members and relatives. As a result, Benjamin was enrolled in and participated in extensive counseling and therapy. Benjamin's counselors suspected that he may have been the victim of sexual abuse himself, however Benjamin repeatedly denied that he had been abused.
  - ¶At the age of 19, Benjamin was charged with felony theft. His parents told the County Attorney Benjamin's prior problems, and as part of a deferred prosecution agreement, Benjamin was required to enter a sex offender treatment program in Utah. As part of the program, he was administered a polygraph examination, during which he was asked whether or not he had ever been the victim of sexual abuse. (This fact is only noteworthy because Torgerson sought to admit the test results at trial.) Benjamin did not complete

the program and returned to Montana.

○ ¶Sometime thereafter, while Benjamin was in jail because of another felony theft charge, he alleged that he had been a victim of sexual abuse. Benjamin claimed that Torgerson sexually abused him over a 10-year period from the age of 5 to the age of 15. This suit followed that disclosure.

○ ¶During the discovery phase of litigation, Benjamin deposed an aunt, Sylvia Moran, who is the sister of Torgerson's ex-wife. Moran testified that Torgerson had sexually abused her from 1972, when she was approximately 14 years old, until approximately 1976, when she graduated from high school. Benjamin also informed Torgerson that he intended to call Darcy Larson, a former school mate of Torgerson to testify that in the late 1960s, when she was 11 years old, Torgerson had sexually assaulted her.

○ ¶In response to pretrial motions, the District Court excluded the evidence of alleged sexual assaults on the two women from Benjamin's case in chief, and excluded the results of polygraph examinations that Benjamin had taken.

○ ¶At trial, Benjamin requested that the District Court allow him to use this evidence of Torgerson's prior conduct to impeach one of Torgerson's expert witnesses. That motion was denied. Torgerson requested that one of his expert witnesses be permitted to testify to the results of the polygraph examination, and this motion was also denied.

○ ¶Following a two-week trial, the jury returned a verdict for Torgerson. Benjamin appeals from that result. Torgerson cross appeals from the refusal to admit the results of Benjamin's polygraph exam.

## ISSUE 1

- ¶Did the District Court abuse its discretion when it excluded evidence of Torgerson's conduct?

- ¶Benjamin intended to introduce evidence in his case that Torgerson sexually assaulted Moran and Larson. Torgerson sought a preliminary ruling excluding the evidence, which the District Court granted on the basis that the evidence of other acts lacked sufficient similarity and proximity in time to qualify for admission pursuant to Rule 404(b), M.R. Evid., and the modified *Just* rule established in *State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52.

- ¶We review a district court's evidentiary rulings for an abuse of discretion. Trial courts are vested with broad discretion to determine

whether evidence is relevant and admissible, and this court will not overturn an evidentiary determination in the absence of an abuse of discretion. *See State v. Link*, 1999 MT 4, ¶20, 974 P.2d 1124, ¶20. The fact that discretion is permitted, infers that there may be more than one permissable way to resolve an evidentiary issue and that the District Court is in the best position to make that decision. In other words, there is not a purely correct or incorrect answer to every evidentiary issue. This is particularly true regarding evidence of prior acts.

- ¶Rule 404, M.R.Evid., provides:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

. . . .

(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

- ¶In *Cartwright v. Equitable Life Assurance* (1996), 276 Mont. 1, 914 P.2d 976, this Court applied the *State v. Matt* criteria and Rule 404(b) in the context of a civil action. Those criteria require that: "(1) the other acts must be similar; (2) the other acts must not be remote in time; (3) the other acts may be admitted for one of the permissible purposes provided in Rule 404(b); and (4) the probative value of the other act must not be outweighed by the danger of unfair prejudice." *Cartwright*, 276 Mont. at 21, 914 P.2d at 989. In this case, the District Court considered the *Matt* criteria and our prior case law which applies those criteria to the facts of various cases. The vast majority of our prior cases are

criminal cases in which the defendant appealed the admission of prior acts evidence.

- ¶With respect to the exclusion of Larson's testimony, Torgerson contends that because no offer of proof was made at trial, Benjamin's objection to the exclusion of her testimony is not properly before this Court. However, Rule 103, M.R.Evid. provides that where a ruling excludes evidence, the substance of the evidence must be made known to the court through an offer of proof, <u>unless</u> the substance was apparent from the context within which questions were asked. *See also In Re Marriage of Johansen* (1993), 261 Mont. 451, 457-58, 863 P.2d 407, 411-12. Although no offer of proof was made at trial, nor was any testimony from Larson made part of the record, the substance of Larson's proffered testimony was set forth in pretrial briefs and discussed during the hearing on the motion to exclude. Therefore, we conclude that the substance of Larson's testimony was made known to the District Court prior to its ruling and was properly preserved in the record for purposes of this appeal.

## Admissibility as Part of Benjamin's Case

- ¶The District Court concluded that the evidence proferred by Benjamin did not meet the first *Matt* requirement of similarity. Benjamin contends that this was an abuse of discretion, because Torgerson's alleged abuse of Moran was sufficiently similar to his alleged abuse of Benjamin and cites various similarities. He argues that the alleged assault on Larson was also similar by virtue of her age at the time she was allegedly assaulted.
- ¶Torgerson contends that the acts to which Moran would have testified were not sufficiently similar to those alleged by Benjamin and lists a number of dissimilarities. He does not address Larson's testimony in his brief to this Court.
- ¶The District Court determined that the prior acts were too remote and too dissimilar to be admissible pursuant to Rule 404(b), M.R.Civ.P.
- ¶The first prong of the *Matt* test does not require that the

prior acts be identical to the crime alleged, but they must be sufficiently similar. *See State v. Whitlow* (1997), 285 Mont. 430, 438, 949 P.2d 239, 245. We have upheld the admission of other crimes where the prior act was the touching of breasts and genitals with attempted penetration of the defendant's young daughter, and the act complained of was touching and actual penetration of another young girl. *See Whitlow*, 285 Mont. at 438, 949 P.2d at 245. We have also concluded that the similarity prong was satisfied where the prior act was the touching of the outer and inner thighs in an attempt to touch the vaginal areas of a 13-year-old girl, and the act complained of was actual touching of the vaginal areas of 8-, 9-, and 14-year-old girls. *See State v. Crist*, 253 Mont. 442, 446, 833 P.2d 1052, 1055. However, the State in *Crist*, also offered prior act evidence that the defendant showed a minor a pornographic magazine, offered her an alcoholic beverage and joked that he would "take advantage" of her. We concluded that these acts were innuendos that were too broad to meet the standards of similarity, and could not properly be characterized as sexual abuse. *See Crist*, 253 Mont. at 446-47, 833 P.2d at 1055.

- ¶In *State v. Long* (1986), 223 Mont. 502, 726 P.2d 1364, this Court held that allegedly rubbing the clothed bottom of a five-year-old was sufficiently similar to the complained of facts that the defendant had rubbed the unclothed vaginas of two, four-year-old children, although the defendant argued that the alleged prior bad act "had no sexual connotation and that it took on evil connotations only when coupled with the charges of sexual assault." *Long*, 223 Mont. at 507, 726 P.2d at 1367.

- ¶In this case, both parties presented the District Court with lengthy argument about the admissibility of the prior acts. From our review of the record, we conclude that the Court did not abuse its discretion when it reviewed the authorities and concluded that the proffered evidence should not be admitted at trial. Despite the fact that both the act

complained of and the alleged prior acts were instances of sexual assaults of minors, there are nonetheless significant distinguishing characteristics in the conduct complained of, from which the District Court could have concluded that the acts were too dissimilar to warrant their admission. In particular, we note that in each of our prior cases cited here, the prior conduct admitted by the District Court was similar in very specific details to the conduct complained of. While we do not conclude that such detail is a necessity in every case, we conclude that the District Court could properly have distinguished the prior conduct in this case on that basis. Accordingly, we defer to the District Court's broad discretion and conclude that that discretion was not abused when the District Court excluded the prior acts testimony of both women during Benjamin's proof of his case because the acts were not sufficiently similar.

- ¶The District Court also concluded that the acts complained of were too remote. We have previously refused to establish an arbitrary time limit for remoteness of prior acts. *See Crist*, 253 Mont. at 446, 833 P.2d at 1055; *State v. Medina* (1990), 245 Mont. 25, 30, 798 P.2d 1032, 1036, *overruled on other grounds by State v. Olson* (1997), 286 Mont. 364, 951 P.2d 571. More recently, we have stated that remoteness of a prior act affects its weight, not its admissibility. *See Whitlow*, 285 Mont. at 438, 949 P.2d at 245; *State v. Ramstead* (1990), 243 Mont. 162, 167, 793 P.2d 802, 805 (citing *State v. Eiler* (1988), 234 Mont. 38, 49, 762 P.2d 210, 217). However, because we affirm the District Court's exclusion of the prior acts evidence on the basis of dissimilarity, we need not address whether it was too remote in time.

## Admissibility for Impeachment of Torgerson

- ¶Benjamin contends that the prior acts evidence should have been admitted to impeach Torgerson. Benjamin argues that Torgerson testified on direct

examination, in effect, that he did not have the opportunity to sexually abuse Benjamin in the basement bedroom of the Whitefish condominium and that Moran's testimony of her own abuse there should have been allowed for impeachment of, and to rebut, this testimony.

- ¶Benjamin testified during proof of his case that Torgerson attempted anal intercourse with him in the basement of the Whitefish condominium, and that he cried out in pain. Torgerson subsequently testified, during the presentation of his case, that there were no doors at the head or foot of the stairs between the basement and ground floors, and that a person upstairs in the condominium could hear a television playing downstairs. During cross- examination, Benjamin asked Torgerson whether it was his testimony that a child in the bedroom with his face in a pillow could still be heard upstairs if he cried out, to which Torgerson responded that if a child screamed, it could be heard through the floors, because they were not insulated.

- ¶Benjamin contends that he should have been permitted to impeach these statements during cross-examination, pursuant to § 26-1-302, MCA, and to rebut Torgerson's statement, using the prior acts evidence, to show that Torgerson's insinuation that the basement could not be used as a place to abuse children was untrue.

- ¶Evidence which is not relevant is not admissible. *See* Rule 402, M.R.Evid. Rule 401, M.R.Evid., defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, including credibility evidence.

- ¶Moran's deposition does not indicate that she ever struggled or cried out while she was allegedly

sexually abused in the Whitefish condominium. Therefore, her testimony would not be relevant impeachment evidence because it would do nothing to establish whether or not the lack of sound barriers in the condominium would prevent Torgerson from sexually abusing Benjamin in the basement bedroom or whether or not Torgerson truthfully testified about the characteristics of the condominium. We therefore conclude that the District Court did not abuse its discretion when it held that Moran's testimony was inadmissible for impeachment of Torgerson.

### Admissibility for Impeachment of Dr. Cannell

- ¶Benjamin also contends that the prior acts evidence should have been admitted to impeach Dr. John Cannell, who testified that there was no reliable, third party documentation that Benjamin was abused and that as a result, he doubted the "scientific validity" of Benjamin's claim. Benjamin asked the District Court to allow him to impeach Dr. Cannell with the prior acts evidence in order to rebut Cannell's testimony that there was no third party documentation of the abuse, but the District Court refused to admit the testimony.
- ¶A witness is presumed to speak the truth. However, this presumption may be controverted or overcome by any matter that has a tendency to prove or disprove the truthfulness of the witness's testimony, including other evidence which contradicts the witness's testimony. *See* § 26-1-302(9), MCA.
- ¶Dr. Cannell testified that the best evidence supporting a claim of child sexual abuse are contemporaneous medical records of the victim

which document the physical effects of the abuse. He further testified that third party documentation is by far the most important information when evaluating the credibility of such a claim. He then testified that in his opinion there was little, if any, scientific validity to Benjamin's claims.

- ¶During cross-examination, Benjamin was able to challenge Dr. Cannell about the types of corroborating evidence which would be valuable for assessing the scientific validity of the claim. "According to Dr. Cannell, these include third party documentation such as police reports, medical reports and reports from social workers."

- ¶Benjamin argued to the District Court that Moran's and Larson's proffered testimony was third party documentation of his claim which provided scientific evidence of abuse. On appeal, he contends that the defendant's "propensity to molest children is a factor a psychiatrist would deem important corroborating evidence," and that as a result of the District Court's ruling, he was unable to cross-examine Dr. Cannell about the types of corroborating evidence which might be pertinent, and whether such evidence existed.

- ¶However, the prior acts evidence which Benjamin sought to use to attack Dr. Cannell was not the type of evidence which Dr. Cannell said would provide third party documentation of Benjamin's abuse. Evidence tending to establish Torgerson's propensity to molest children is evidence of Torgerson's character, rather than of his actions with respect to Benjamin. It was corroborating evidence of Benjamin's abuse, rather than additional

evidence about his abuser, which Dr. Cannell testified Benjamin lacked. Therefore the prior acts evidence would not have tended to impeach Dr. Cannell's testimony and was properly excluded by the District Court when offered for that purpose.

## ISSUE 2

- ¶Did the District Court err by allowing testimony regarding Benjamin's credibility?

- ¶Benjamin contends that Drs. John Cannell and William Stratford presented improper credibility testimony, substituting their judgment for the finder of fact as to whether Benjamin was credible. Both experts testified to the fact that Benjamin had made untruthful statements during several of his psychiatric evaluations and therapy sessions. Torgerson contends that Benjamin's objections to this evidence were properly overruled by the District Court, because the experts did not testify whether they found Benjamin to be credible, but simply related the results of psychological tests, which were administered to assess whether he was falsifying symptoms of a mental disease. He also contends that Benjamin had previously opened the door to the issue of his own credibility by presenting testimony that his test results were "valid," *i.e.*, "credible," and by presenting testimony concerning events in the past about which Benjamin had

lied to his therapists.

- ¶By education, training, and experience, both Drs. Cannell and Stratford were qualified as psychiatric experts. Pursuant to Rule 702, M.R.Evid., they were qualified to provide diagnoses of psychiatric conditions and testify to the objective signs or subjective symptoms which are associated with various injuries, and which they have gleaned from their examination of a person or review of the appropriate sources, for the purpose of assisting the trier of fact to understand the evidence or to determine the fact in issue. They are no more qualified than the jury, however, and therefore not permitted to speculate to the jury about Benjamin's possible motivation for making his claim. *See Linden v. Huestis* (1991) 247 Mont. 383, 388, 807 P.2d 185, 188.

- ¶The credibility of a witness lies exclusively within the province of the trier of fact, and expert testimony regarding the credibility of a witness improperly invades the jury's function by placing a stamp of scientific legitimacy on a victim's allegations, or by dismissing the validity of the allegations. *See State v. Hensely*, 250 Mont. 478, 481, 821 P.2d 1029, 1031.

- ¶At the same time, this Court has continued to allow physicians to assist the trier of fact to understand evidence of potential malingering. *See EBI/Orion Group v. Blythe,* 1998 MT 90, 288 Mont. 356, 957 P.2d 1134; *State v. Race* (1997)

285 Mont. 177, 946 P.2d 641; *State v. Santos* (1995) 273 Mont. 125, 902 P.2d 510.

- ¶Testimony from psychiatric experts often charts a dangerous course through the waters of admissible evidence and the shoals of improper credibility testimony because of its very nature. Unlike other fields of medicine, the psychiatric or psychological expert relies, for his or her diagnosis, on a patient's description of the way he interacts with the world around him, and observation of his behavior to see if it conforms with that description. Therefore, there are half a dozen tests which can be administered to a psychiatric patient that contain a reliability scale, *i.e.*, a component for measuring the probability that the patient is telling the truth about his symptoms. Such tests are important diagnostic tools for both psychiatric treatment and for the expert witness; however, testimony about the conclusions drawn from the test results can potentially invade the province of the jury.

- ¶In *Linden*, the defendant against a claim for injuries arising from an automobile accident, presented expert medical testimony that the plaintiff's present complaints were a result of "chronic pain syndrome," which he explained was a continuation of pain, associated with an opportunity for secondary gain, where the pain is no longer explainable by any physical trauma. We concluded that

testimony regarding secondary gain prejudiced the jury and affected the plaintiff's right to a fair trial. *See Linden*, 247 Mont. at 389, 807 P.2d at 188.

- ¶In *Hensley*, the defendant was charged with sexual intercourse without consent for the alleged molestation of his teenage daughter. In his defense he presented testimony from other family members that it would have been virtually impossible to commit the offense. The district court admitted rebuttal testimony from a social worker, to the effect that in her professional judgment the victim was truthful. We held that this was reversible error and stated that "'[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth' . . . . A jury is capable of assessing the credibility of such a witness." *See Hensley*, 250 Mont. at 482, 821 P.2d at 1031, (citing *Wisconsin v. Haseltine* (Wis. App. 1984), 352 N.W.2d 673, 676).

- ¶In this case, Dr. Cannell testified extensively about the necessity of treating skeptically (although he did not use those words) any claims of child sexual abuse that could not be corroborated by third party documentation. He testified that a "credibility assessment" of Benjamin's claims was necessary, and he testified that in his opinion, there was no scientific evidence which supported Benjamin's claims. He further testified

under cross-examination that when there is a question of secondary gain, one must be more careful in assessing the diagnosis.

- ¶Dr. Stratford testified about documentation that he had reviewed from other psychiatrists and counselors concerning a number of untrue statements made by Benjamin. He also testified that, in his opinion, Benjamin's psychiatric experts should have looked for malingered or falsified posttraumatic stress disorder, based upon Benjamin's psychiatric history.

- ¶A review of the record shows that prior to Dr. Cannell's and Dr. Stratford's testimony, Benjamin's own experts had testified that he was a person who lied to make things easier for himself, had a lack of conscience and had trouble distinguishing right from wrong. Neither defense expert testified that Benjamin was actually malingering or pursuing secondary gain. The District Court concluded that Benjamin had previously opened the door to the reliability scales results from the psychiatric tests when his own experts testified to the results during Benjamin's case in chief. It overruled Benjamin's objections to testimony about specific instances of Benjamin's dishonesty that the jury had already heard about from other witnesses. However, in some cases the District Court sustained Benjamin's objections to Stratford's testimony about specific untrue statements made by

Benjamin.

- ¶In sum, Torgerson's experts testified that credibility of the complaining witness is very important where there is no third party corroboration of sexual abuse. They testified about prior untrue statements by Benjamin which were documented in his psychiatric history; they testified to the results of his psychiatric testing; and they each gave the opinion that he has Associative Personality Disorder. They testified to their interpretations of the evidence, which did not support Benjamin's claims. No doubt the point of such testimony was to "assist" the jury to reach the conclusion that Benjamin was not being truthful about the alleged abuse by Torgerson, but they did not invade the province of the jury by testifying that Benjamin was or was not truthful, or was or was not motivated by secondary gain.

- ¶We conclude, therefore, that the District Court did not err by admitting testimony regarding Benjamin's credibility.

- ¶Because we affirm the judgment of the District Court, we do not address the respondent's cross appeal.

- ¶We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ JAMES E. PURCELL, District Judge,

for Justice James C. Nelson