FILED

02/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0335

DA 25-0335

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 19

LORI COLLINS,

      Plaintiff, Appellee,
      and Cross-Appellant,

    v.

WHITEFISH HOUSING AUTHORITY,

      Defendant, Appellant,
      and Cross-Appellee.

APPEAL FROM:   District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV-23-1277A
                 Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Natalie A. Hammond, Gordon Rees Scully Mansukhani, LLP,
          Missoula, Montana

      For Appellee:

          Sean S. Frampton, Frampton Purdy Law Firm, Whitefish, Montana

          Submitted on Briefs:  December 24, 2025

                         Decided:  February 10, 2026

Filed:

                        _____
                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant and Cross-Appellee, Whitefish Housing Authority (WHA or Appellant), appeals the Judgment in favor of Appellee and Cross-Appellant, Lori Collins (Collins or Appellee), entered by the Eleventh Judicial District Court, Flathead County, which awarded Collins damages after a jury trial on her claim for defamation. We consider on appeal:

1. *Whether the District Court erred by admitting the subject Article into evidence over Appellant's hearsay objection.*

2. *Whether the District Court abused its discretion by denying Appellant's Motion to Amend Judgment to apply the statutory cap.*

We consider on cross-appeal:

3. *Whether the District Court erred by denying Appellee's motion for attorney fees for defending against counterclaims allegedly made in bad faith.*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 WHA is a Montana incorporated public housing authority operating in Whitefish, Montana, and governed by an elected seven-member board (Board). Collins began to work for WHA in 2007 in the position of Operations Manager, and was promoted in 2013 to Executive Director, a position she held during the remainder of her employment with WHA. During her tenure, the Board conducted performance evaluations about every two years, and Collins received positive reviews.

¶4 In August 2022, the Board received a grievance from a tenant residing in one of WHA's apartment buildings. The grievance alleged several claims, including that Collins

2

had engaged in preferential and improper placement of tenants in the apartment building in violation of federal regulations. To investigate the allegations, the Board retained attorney Sarah D. Simkins, who presented her conclusions in a report to the Board in September 2022. Simkins stated "there are no records or documentation that WHA can rely upon to discern whether" a tenant had "received preferential placement over another qualified applicant," and thus, "information is not sufficient to conclude Collins violated any policies with respect to placement [of] the residents in question."[1] On October 11, 2022, Collins gave the Board notice of her intent to resign from employment, effective October 15, 2022. At trial, Collins testified she resigned because Board members "didn't have [her] back, they didn't stand up for [her] after everything [she]'d done[,] and because "[t]hey hurt [her] feelings."

¶5 In early November 2022, the Board brought Collins back on a contractual basis to work until a suitable replacement for her position could be hired. In January 2023, the Board hired Dwarne Hawkins (Hawkins) as Interim Executive Director, replacing Collins. In July 2023, WHA received a request, made to the Board Chairman, from a Daily Interlake reporter to interview Hawkins for purposes of publishing an article. WHA contended in the litigation that it understood the interview and subsequent article (Article) would focus on the current housing problems in the Whitefish area and Hawkins' role as Interim Executive Director.

---

[1] In its appellate briefing, WHA states the grievance against Collins could not be verified "[b]ecause of poor recordkeeping," citing to trial testimony.

¶6     However, the Article, written by reporter Adrian Knowler and published in the Daily Interlake on July 23, 2023, was titled, "After scandal, Whitefish Housing Authority strives to rebuild trust." Within the Article, Knowler reported that Hawkins had "worked hard since joining on an interim basis to clean up his predecessor's actions, which he described as unethical, and bring the authority into compliance with federal rules governing tenant selection." The Article quoted Hawkins as saying that Collins' tenure had put WHA in a "really bad position[,]" that "[f]ixing the malfeasance of the prior administration has been a top priority," and that a large part of his early employment dealt with "trying to repair the damage that was done[.]" Thereafter, the Whitefish Pilot, Yahoo News, and the Flathead 411's Facebook group republished the Article, under the same or similar titles, which contributed to wider dissemination of the statements about Collins. At trial, a member of the Board testified that the statements made about Collins by Hawkins in the Article were at least partially untrue. Despite requests from Collins and the Mayor of Whitefish for WHA to retract the statements made in the Article about Collins, WHA declined.

¶7     Collins filed this action in November 2023 against WHA, Hawkins, and Hagadone Montana Publishing, LLC, ultimately trying her claim for defamation against WHA to a jury.[2] WHA counterclaimed against Collins, asserting that she negligently performed her duties as Executive Director and had failed to provide adequate notice of her resignation as Executive Director. Collins moved for summary judgment on WHA's counterclaim,

---

[2] Collins' claims against Hawkins were dismissed prior to trial. Collins and Hagadone Montana Publishing, LLC, settled prior to trial.

4

and sought an award of attorney fees, asserting that WHA's counterclaim had been made in bad faith. The District Court granted her motion for summary judgment, but denied her request for attorney fees, reasoning that "WHA's counterclaim and affirmative defense may not have been successful but they do not rise to the level of being frivolous[.]"

¶8 In anticipation of trial, the parties jointly prepared a pretrial order, which contained, *inter alia*, the following provisions (bolding removed, spacing adjusted):

## I. AGREED FACTS

5. On July 23, 2023, The Daily Interlake published an article entitled "*After scandal, Whitefish Housing Authority strives to rebuild trust.*" Written by reporter Adrian Knowler ("Knowler").[3]

## III. DEFENDANT [WHA's] CONTENTIONS

23. The subject article does not contain a quote of Hawkins stating that Collins was unethical.

24. The subject article does not contain a quote of Hawkins stating that Collins committed misconduct.

25. The quote in the subject article that refers to the "malfeasance of the prior administration" does not state that it pertains to Collins specifically.

26. The quote in the article that refers to the "issues that played out last summer and fall" does not state that it pertains to Collins specifically.

27. Collins cannot prove that any quotes of Hawkins that do appear in the subject article were made with malice.

34. The word "scandal" used in the subject article was the opinion of Hagadone, per its Rule 30(b)(6) testimony.

---

[3] Collins set forth a similar statement in her Plaintiff's Contentions #14, adding that the article had been republished in the Whitefish Pilot.

## IV. EXHIBITS

The opposing party will have three business days, or until August 29, 2024, to lodge any objections to any exhibits identified. Failure to object to any exhibit will constitute a waiver of that objection.

## VI. ISSUES OF FACT

Defendant's issues of fact[:]

2. Were the contents of the subject article about Collins truthful?

3. Did the contents of the subject article consist of opinions of Knowler or Hagadone or others?

5. Was Hawkins quoted as saying slanderous statements about Collins? If so, what are the quotes that contained slanderous statements about Collins and was each quote made with malice?

WHA did not list any issues of law. In addition to its contentions about the content and intentions expressed in the Article, WHA's contentions included allegations of personal misconduct by Collins during her employment, and allegations of malfeasance, including references to her tenant placement practices. Notably, neither party listed either Hawkins or Knowler as a witness. The Daily Interlake and Whitefish Pilot articles were included as exhibits in both the Plaintiff's and Defendant's exhibit listings, numbered as Exhibit 111 and Exhibit 112 by Collins. Despite the provisions giving the parties three days to object to any exhibit, and explaining that "[f]ailure to object to any exhibit will constitute a waiver of that objection," no objection was made to the Article Exhibits by WHA.

¶9 On the morning of the first day of trial, Friday, January 10, 2025, WHA's counsel objected to the admission of the Article Exhibits on hearsay grounds, leading to the following argument:

DEFENDANT'S COUNSEL: [A]nd obviously newspaper articles are self-authenticating, so not a foundation exhibit, but it's depending upon—and we lodged an objection, depending upon the purpose for admitting the article we might have another objection. If it's being offered as to the contents of the article, no objection, but if it's being offered as written evidence of what was said during the interview between Mr. Hawkins and the reporter . . . if it's being offered as to what Mr. Hawkins said at the interview—because that of course is an element of the slander claim that's been brought . . . .

PLAINTIFF'S COUNSEL: I'm looking at the objections that were noted and there is no objection to 111 in the Pretrial Order. That would be the first point.
      Second point is I don't understand the objection. I'm certainly not intending to ask questions of Mr. Knowler or Mr. Hawkins about what questions were asked in an interview, I'm going to introduce the article and say this is what was said about Lori Collins.

THE COURT: All right. Well, I'm looking at the Defendant's Notice of Filing Objections to Trial Exhibits, Document 144, Exhibit 111, which is the Daily Inter Lake article, then 112, which is the Whitefish Pilot article. No objection was noted.[4]

¶10 The District Court thus permitted Collins to use the Article, Exhibit 111, in her opening statement. On the second day of trial, WHA renewed its objections to both Exhibits, which the District Court denied, ruling that the Article "does not constitute hearsay under Rule 801(d)(2), and likely subsections a, b, c or d." WHA again objected when Collins moved for admission of the Article Exhibits, which was overruled.

¶11 At the close of Collins' case-in-chief, WHA moved for judgment as a matter of law, arguing that, because no testimony was provided from the speaker or the listener of the alleged defamatory comments, and that the Article, which was hearsay, had been used

---

[4] The statement by WHA's counsel about lodging an objection to the Article was a reference to objections offered by WHA to Collins' Exhibits 64 and 65, which were secondary publications of the original Article, but these objections were not based on hearsay concerns.

exclusively, Collins had thus failed to provide sufficient evidence to support her defamation claim. The District Court denied the motion, stating there was evidence to justify submission of the issue to the jury. The jury returned a verdict in favor of Collins, awarding damages of $1.5 million.

¶12 WHA moved for a new trial and renewed its motion for judgment as a matter of law, contending again that Collins had failed to prove that the defamatory statements had been made by WHA. WHA argued that "because the admission of hearsay evidence was in error, insufficient evidence was presented to justify the verdict." WHA also moved to amend the judgment, contending that, as a governmental entity, it was entitled to the $750,000 limitation on tort damages pursuant to § 2-9-108, MCA. In response, Collins contended that the damage cap was not available to WHA because it carried a policy with a damage limit of $2 million.

¶13 The District Court denied the motions for judgment notwithstanding the verdict and for a new trial, reasoning, "WHA offer[ed] no new arguments or evidence which justify renewing its motion for judgment notwithstanding the verdict" and that "[s]ubstantial evidence supported the jury's verdict and this Court declines to overturn the jury's verdict and grant the motion for new trial." The District Court did not rule on WHA's motion to amend the judgment, and therefore it was deemed denied by operation of law.

¶14 During the litigation, WHA discovered that Hawkins was embezzling from the Housing Authority, terminated his employment, and reported the matter to law enforcement, leading to federal charges against Hawkins. Indictment at 5, *U.S. v. Hawkins*,

8

No. CR 24-35-M-DWM-1 (D. Mont. June 26, 2024).[5]  He was subsequently sentenced to confinement and ordered to pay restitution.  Judgment at 6, *U.S. v. Hawkins*, No. CR 24-35-M-DWM-1 (D. Mont. Feb. 7, 2025).

¶15  WHA appeals.

## STANDARD OF REVIEW

¶16  Whether a judgment as a matter of law should be granted or denied is a question of law, which we review de novo.  *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727.  "We review a district court's evidentiary rulings for an abuse of discretion."  *Benjamin v. Torgerson*, 1999 MT 216, ¶ 15, 295 Mont. 528, 985 P.2d 734.  The abuse of discretion standard of review "also applies to the denial of a motion for new trial based on evidentiary rulings and further requires the abuse of discretion 'must be so significant as to materially affect the substantial rights of the complaining party.'"  *Simmons Oil Corp. v. Wells Fargo Bank, N.A.*, 1998 MT 129, ¶ 18, 289 Mont. 119, 960 P.2d 291 (quoting *Hansen v. Hansen*, 254 Mont. 152, 160, 835 P.2d 748, 753 (1992)).  "The abuse of discretion question 'is not whether this Court would have reached the same decision, but, whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason.'"  *Newman v. Lichfield*, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625 (quoting *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, 30 P.3d 326).

---

[5] We take judicial notice of the federal proceeding against Hawkins.  M. R. Evid. 202; *In re K.C.H.*, 2003 MT 125, ¶ 15, 316 Mont. 13, 68 P.3d 788.

¶17     We also review for abuse of discretion a district court's denial of a motion to amend a judgment under M. R. Civ. P. 59(g), and a district court's determination to grant or deny the award of attorney fees. *Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, ¶ 20, 345 Mont. 125, 191 P.3d 374 (citations omitted).

## DISCUSSION

¶18     *1. Whether the District Court erred by admitting the subject Article into evidence over Appellant's hearsay objection.*

¶19     The parties' well-written arguments are a veritable law school course on the hearsay rule.  Attacking the admission of the Article, WHA argues the Article is "double hearsay" because it "presents two levels of hearsay":  first, Hawkins' out-of-court statements, and second, Knowler's "unverified out of court rendition of those statements."  Contrary to the District Court's analysis, WHA argues that the Article, offered for the truth of the matters it asserts, "is hearsay to which no [Rule] exception applies."  Thus, WHA contends that, upon the Article's exclusion, "no legally sufficient basis remains to support Collins' claim for defamation," and the District Court thus erred by denying its motions for judgment as a matter of law, for a new trial, and to amend the judgment, which were all premised upon its hearsay position.  Countering Collins' trial argument that it had waived the objection, WHA argues that its "non-objection to the pretrial listing of the Article spoke to foundation and authentication," but that it raised "a timely and substantive objection when it became clear that Collins intended to solely rely on the Article for proof that defamatory statements were made by WHA."  Collins answers that the admission of the Article was correct on several evidentiary grounds, including that it was not definitional hearsay because it was

10

not offered for the truth of the statements made about Collins (M. R. Evid. 801(c)); that the statements were admissions by a party opponent, specifically by its agent, which WHA did not deny had been made (M. R. Evid. 801(d)(2)(A)); that it was a statement that WHA had manifested adoption of (M. R. Evid. 801(d)(2)(B)); that it was a statement that WHA had authorized to be made concerning the subject (M. R. Evid. 801(d)(2)(C)); and that, even if hearsay, the Article qualified for admission under the residual exception as demonstrating trustworthiness (M. R. Evid. 803(24)). However, we need not resolve the hearsay questions posed by the parties in this appeal because we conclude that the issue was waived by the way the case was litigated.

¶20 WHA strongly contends its objection on the morning of the first day of trial was timely under M. R. Evid. 103(a)(1), because it raised the hearsay issue at the time the Article was first introduced. Specifically, WHA objected when Collins' counsel asked to use Exhibit 111, the Daily Interlake article, during his opening statement, and argues its lack of objection to the Article Exhibits in the pre-trial order waived only foundational objections, not a hearsay objection to the way Collins intended to use the Articles.

¶21 However, even if WHA's evidentiary argument would be viable, the parties' stipulations in the pre-trial order were much broader than what WHA portrays. As Exhibits, the Articles were listed by both parties and WHA made no objection to them. But further, as described above, the parties' trial contentions were founded upon the Articles and their content, including merits issues. WHA's stated factual issues included whether "the contents of the subject article about Collins [were] truthful?", whether "the contents of the subject article consist[ed] of opinions of Knowler and Hagadone or

11

others?", and "[w]as Hawkins quoted as saying slanderous statements about Collins?" WHA made numerous contentions concerning what the "subject article" did and did not contain, such as, for example, that the Article "does not contain a quote of Hawkins stating that Collins was unethical," and about the motive for making the statements. Then, WHA provided contentions about Collins' performance and conduct, including that she drank alcohol at her desk and at bars during business hours, and that she overrode staff concerns to place tenants into apartments before others on the waiting list, contentions obviously offered to defend the truthfulness of statements made in the Article. Neither party listed either Hawkins or Knowler as a witness; it was clear to all that neither of them would be participating in the trial, and it was clear how Collins intended to use the Article. In short, the parties framed the case and agreed to try it entirely based upon the Article as it was, including its contents, truthfulness, and the motive for the statements, thus assuming and necessitating its admission. Had the District Court sustained WHA's hearsay objection on the first morning of trial and excluded the Article, everyone could have gone home. There would have been nothing left of the case to try.

¶22 Our decision rests upon the Rules of Civil Procedure and our precedent. "Rule 16(e), M.R.Civ.P., states after a pre-trial conference, a pre-trial order shall control the subsequent course of the action unless modified by a subsequent order and the order following a final pre-trial conference shall be modified only to prevent manifest injustice." *Pub. Lands Access Ass'n v. Jones*, 2004 MT 394, ¶ 19, 325 Mont. 236, 104 P.3d 496. Similarly, a "pretrial order supersedes the pleadings, states the issues to be tried, and controls the subsequent course of the action." *Ganoung v. Stiles*, 2017 MT 176, ¶ 28,

12

388 Mont. 152, 398 P.3d 282 (citation omitted). In a case similar to this one, we held that "[h]aving stipulated [in the pre-trial order] to the admission of documents without foundation, a party may not later raise a hearsay objection at trial." *Crockett v. Billings*, 234 Mont. 87, 97, 761 P.2d 813, 819 (1988) (citing *Swenson v. Buffalo Bldg. Co.*, 194 Mont. 141, 150, 635 P.2d. 978, 983 (1981)). Here, the breadth of the parties' stipulations in the pre-trial order, particularly about the issues to be tried, precluded WHA's hearsay objections to the Article. We thus affirm the ruling of the District Court.

¶23    *2. Whether the District Court abused its discretion by denying Appellant's Motion to Amend Judgment to apply the statutory cap.*

¶24    WHA argues the District Cout erred by denying its motion because it is entitled to application of the statutory cap of $750,000 on damages, due to its status as "a statutory municipal corporation, existing and operating under § 7-15-4411[, MCA]." *See also* § 2-9-108, MCA. WHA explains that its insurance carrier contests coverage, including coverage of issues related to Hawkins' actions, and that federal litigation is now pending. It argues that, "[u]ntil coverage is definitively established, the cap should apply to avoid creating a judgment that exceeds WHA's legal responsibility or exposes the housing authority to an unrecoverable amount." Collins acknowledges that WHA, as a government entity, was initially eligible for application of the cap, but because it carries liability insurance, the cap does not apply in this case.

¶25    While we acknowledge that WHA is a government corporation who may be eligible for application of the cap, we conclude this issue cannot be addressed at this time. Application of the statutory cap will require resolution of the insurance coverage question.

13

*See Daniels v. Gallatin Cnty.*, 2022 MT 137, 409 Mont. 220, 513 P.3d 514. The issue of whether the statutory cap applies will ripen after WHA and its insurer have resolved the issues related to the existence and extent of liability coverage and the limits of that coverage. "[A] court will not act when the legal issue raised is only hypothetical or the existence of a controversy merely speculative." *Mont. Power Co. v. Mont. PSC*, 2001 MT 102, ¶ 32, 305 Mont. 260, 26 P.3d 91. As such, we conclude the District Court did not abuse its discretion by denying WHA's Motion to Amend the Judgment and apply statutory caps.

¶26    3. *Whether the District Court erred by denying Appellee's motion for attorney fees for defending against counterclaims allegedly made in bad faith.*

¶27    In her cross-appeal, Collins contends that the District Court abused its discretion by denying her motion for attorney fees, asserting WHA's counterclaim was frivolous, made in bad faith, and "outside the bounds of legitimacy." WHA answers that the District Court did not abuse its discretion because "WHA's counterclaims, although unsuccessful, were not frivolous or in bad faith, but based on colorable legal theories." It emphasizes that it sustained financial damage due to Collins' failure to serve only four days after she tendered her resignation. The District Court concluded that WHA's counterclaim was not made in bad faith and denied the motion for fees, reasoning that "WHA's counterclaim and affirmative defense may not have been successful but they do not rise to the level of being frivolous."

¶28    We concur with the District Court. The fact that WHA's counterclaim was ultimately rejected does not equate by itself to a conclusion that it was made in bad faith

14

or was frivolous. While Collins argues that "WHA absolutely knew that it suffered no damages at the time it asserted its claim against [Collins]," there was some evidence in support of the claim, and certainly, Collins' departure led to difficult times for WHA, and we believe the counterclaim was not wholly frivolous. As stated in WHA's reply brief, "WHA was acting out of genuine concern for organizational disruption and potential financial impact after an abrupt executive departure." As such, we conclude the District Court did not abuse its discretion in denying Collins' motion for attorney fees.

¶29 In conclusion, we hold that the District Court correctly admitted the Article into evidence at trial, did not abuse its discretion by denying WHA's post-trial motions, and did not abuse its discretion by denying Collins' motion for attorney fees.

¶30 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON