FILED

07/18/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0441

DA 16-0441

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 176

ASHLEE GANOUNG and AMBER MASON,

      Plaintiffs and Appellees,

      v.

BONNIE L. STILES and KRISTA BERRY as
Co-Guardians and Conservators for MATHEW E.
STILES and THE STILES FAMILY TRUST,

      Defendants and Appellants.

BONNIE L. STILES and KRISTA BERRY as
Co-Guardians and Conservators for MATTHEW E.
STILES and THE STILES FAMILY TRUST,

      Counterclaimants and Appellants,

      v.

ASHLEE GANOUNG and AMBER MASON,

      Counterdefendants and Appellees.

APPEAL FROM:    District Court of the Fifth Judicial District,
                    In and For the County of Madison, Cause No. DV 29-2014-52
                    Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Lori A. Harshbarger, Attorney at Law, Whitehall, Montana

        For Appellees:

                John Warren, Attorney at Law, Dillon, Montana

                          Submitted on Briefs:  April 5, 2017
                                   Decided:  July 18, 2017

Filed:

                                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Defendants Bonnie Stiles (Bonnie) and Krista Berry (Berry), as co-guardians of Matthew E. Stiles (Matthew) and conservators for the Stiles Family Trust, appeal the June 9, 2016 Findings of Facts, Conclusions of Law and Judgment by the Twenty-First Judicial District Court, Ravalli County. We restate the issues as follows:

> *Issue One: Whether the District Court erred in determining the location, width, and scope of the Stiles' express easement across the Ganoung and Mason property.*
>
> *Issue Two: Whether the District Court erred by requiring the Stiles to pay the cost of fencing a new road on Ganoung and Mason's property if the Stiles choose to relocate the easement.*
>
> *Issue Three: Whether the District Court erred by not defining the location and scope of Ganoung and Mason's easement across the Stiles property.*

¶2 We affirm in part, and reverse in part.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 This case concerns a family dispute regarding once commonly held property that was subdivided and jointly used, then fenced. The property at issue is the southwest quarter of Section 15, Township 6 South, Range 3 West, P.M.M. Madison County, Montana. The Plaintiffs, Ashlee Ganoung (Ganoung) and Amber Mason (Mason), own the southern half of the property (Ganoung and Mason property). The Defendants own the northern half of the property (Stiles property).

¶4 In the late 1940s, Lester and Mary Stiles, later divorced, purchased the property at issue. In 1982, Mary held the property in her name and divided the property in half, conveying "together with easement for access over the lands of the grantor" an undivided

2

one-half interest in the southern half of the property to her daughter Addie, and an undivided one-half interest in the northern half of the property to her son Matthew. In 2004, Mary conveyed her entire interest in the southern half of the property to Addie and her entire interest in the northern half to Matthew. Both deeds again provided "together with easement for access over lands of grantor." Mary passed away in January 2008.

¶5 On November 1, 2013, Addie conveyed her property to her daughters, Ganoung and Mason, by quit claim deed creating a joint tenancy with right of survivorship. Addie passed away in December 2013. After this action began, Matthew conveyed his property to himself and to the Stiles Family Trust, of which Bonnie is trustee. On March 23, 2015, Matthew, having suffered from Multiple Sclerosis for much of his adult life, was declared incapacitated, and Bonnie and Berry were appointed his co-guardians and conservators.

¶6 In 1982 and 2004, when Mary divided and conveyed the property to her children, she lived in one of two houses that sit on the Ganoung and Mason property. Historically, Lester had operated various businesses on the property, including an upholstery business out of the house, a mobile home park located on the Ganoung and Mason property, and a scrap metal business and junk yard that transversed the entire property. There has not been residential use of the Stiles property, although the property has been used for storage of trailers by the Stiles and their friends.

¶7 Witnesses testified that historically there were at least two routes that crossed the Ganoung and Mason property to access the Stiles property, which included use by horseback, foot, and vehicle. Access was not always limited to the existing routes because parties would also travel back and forth where necessary to catch horses. The

3

two established routes are two-track, non-improved trails that begin at the gate entrance at the south border of the Ganoung and Mason property. The routes then diverge, with one route traveling westerly and the other traveling mainly through the center of the property in a northeasterly direction.

¶8 In June 2014, Matthew hired Peterson Fencing to install a fence between the two parcels, after he became concerned over the number of horses Ganoung and Mason ran on the property. Until that time, the parties used their two properties together as one parcel for recreation, hunting, and agriculture—mainly horse pasture. Although Bonnie and Berry testified that Addie and Matthew had discussed a division fence as early as 2009, Matthew gave Ganoung and Mason little notice before installing the fence—calling the night before construction began. Ganoung and Mason did not agree with the fence construction, but testified they felt hamstrung by the lack of notice.

¶9 The Stiles' fence has two gates at either end of their property, located where the two existing and historically used routes cross onto their property from the Ganoung and Mason property. These gates have never been locked by the Stiles, nor have the Stiles taken other measures to prevent Ganoung and Mason from crossing their parcel to access public land that borders the Stiles property. Nevertheless, Ganoung and Mason testified that the fence's mere existence indicated to them that they were not to travel across the Stiles property.

¶10 Ganoung and Mason locked the gate at the southern border of their property on several occasions, which prevented the Stiles and their guests from crossing the Ganoung and Mason property to access the Stiles property. Ganoung and Mason's tenant, Judy

4

Janelli, held a key to the Ganoung and Mason entrance gate and the Stiles were required to contact Judy to unlock the gate. One incident required the Stiles to involve law enforcement to unlock the gate after Ganoung and Mason sought to prevent one of the Stiles' guests from traveling across the Ganoung and Mason property with a trailer that could potentially cause damage to the roadway. The Stiles sought injunctive relief to require the gate to remain unlocked during this litigation.

¶11 On August 28, 2014, Ganoung and Mason filed a quiet title action, seeking a determination of the location, width, and scope of the Stiles' easements over the Ganoung and Mason property.[1] The Stiles filed their answer and counterclaim that included causes of action for deprivation of property rights and interference with their easement rights, declaratory judgment on the scope of their easement across the Ganoung and Mason property, injunctive relief to prevent Ganoung and Mason from locking the gate and depriving them of access to their easement, and damages for the cost of installing the fence. On November 17, 2014, Ganoung and Mason filed an answer to the Stiles' counterclaims. On April 21, 2015, Ganoung and Mason amended their answer. On August 14, 2015, Ganoung and Mason filed for summary judgment on Stiles' claim to require Ganoung and Mason to pay for the partition fence. The District Court dismissed the partition fence payment claim after the Stiles moved to voluntarily dismiss the claim.

---

[1] Ganoung and Mason filed their original complaint naming Matthew as the sole defendant. The Stiles moved to amend their counterclaim to include the proper parties after Matthew was declared incompetent, naming Bonnie and Berry as Co-Guardians and Conservators of Matthew, and Bonnie as Trustee of the Stiles Family Trust.

On November 30, 2015, the Stiles amended their counterclaim to include a claim for an easement by necessity for utilities.

¶12   On March 21, 2016, the District Court entered a pre-trial order setting forth the agreed facts, the parties' contentions, exhibits, witnesses, issues of fact, issues of law, discovery, stipulations, and procedural issues regarding the bench trial scheduled for April 20 and 21, 2016.  The parties submitted their respective trial briefs the week before trial.  At the conclusion of the trial, Ganoung and Mason moved to dismiss the Stiles' claim for a utility easement, which the District Court granted on May 9, 2016.  On June 9, 2016, the District Court entered Findings of Facts, Conclusions of Law and Judgment.

**STANDARDS OF REVIEW**

¶13   We review a trial court's findings of facts to determine whether they are clearly erroneous.  *Clark v. Pennock*, 2010 MT 192, ¶ 21, 357 Mont. 338, 239 P.3d 922.  A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made.  *Clark*, ¶ 21.  The trial court is in a better position than this Court to observe the witnesses and assess their credibility. *Clark*, ¶ 21.  We review a trial court's conclusions of law to determine whether they are correct. *Clark*, ¶ 21.

**DISCUSSION**

¶14   *Issue One: Whether the District Court erred in determining the location, width, and scope of the Stiles' express easement across the Ganoung and Mason property.*

¶15   An easement is a non-possessory interest in land that gives rights to a person to use another's land for a specific purpose or as a servitude imposed on the land as a

6

burden. *Woods v. Shannon*, 2015 MT 76, ¶ 10, 378 Mont. 365, 344 P.3d 413 (citing *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84). An express easement is created by a written instrument. *Woods*, ¶ 12. The terms of the grant determine the extent or scope of an express easement. Section 70-17-106, MCA; *Woods*, ¶ 12 (citing *Clark*, ¶ 25). "Where a document fails adequately to fix the location of an easement, a court may ascertain the location by use." *Ponderosa Pines Ranch, Inc. v. Hevner*, 2002 MT 184, ¶ 16, 311 Mont. 82, 53 P.3d 381 (citing Jon W. Bruce and James W. Ely, *The Law of Easements and Licenses in Land* § 7:6, 7-12 (2001)). When an express grant is general in terms, "an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to that particular course or manner." *Strahan v. Bush*, 237 Mont. 265, 268, 773 P.2d 718, 720 (1989) (quoting 25 Am. Jur. 2d *Easements and Licenses* § 73, at 479). Therefore, the Court considers the situation of the property, surrounding circumstances, and historical use to define the breadth and scope of an easement when a grant is not specific. *Clark*, ¶ 25. The right-of-way may not be used in a way different than an established use or that burdens the servient estate to a greater extent than contemplated at the time of the easement's creation. *Guthrie v. Hardy*, 2001 MT 122, ¶ 48, 305 Mont. 367, 28 P.3d 467. Although, "as conditions change, so too may the use by the dominant tenement so long as the changes are 'evolutionary but not revolutionary.'" *Guthrie*, ¶ 48.

¶16 The legal description of both conveyances contained identical granting language: "together with easement for access over lands of grantor." The District Court found that the easement language in the deeds does not contain any language that defined the

7

location, width, or scope of the easements across either parcel or that restricted the use of the roadways that existed at the time of the first conveyance in 1982, or the second conveyance in 2004. The District Court found that when the reciprocal easements were created in 1982 and 2004, the historical use and access to the respective parties' properties was for the common purposes of horse pasture, hunting, and recreation. The District Court also found that Mary intended to grant an easement across the Ganoung and Mason property from Highway 287 to allow the Stiles to access their property, and an easement across the Stiles' property to allow Ganoung and Mason to access bordering public land.

¶17 The District Court held that the easements are defined by historical use at the time of the grants. The District Court also held that Matthew extinguished the historical, reciprocal, and unfettered access of the parties to both parcels with the construction of the fence. Relying on *Clark*, the District Court determined that: "The scope of an easement that is not specifically defined 'need only be such as is reasonably necessary and convenient for the purpose for which it was created.'" *Woods*, ¶ 12 (quoting *Clark*, ¶ 25). The District Court concluded that, since the fence's construction, access has been limited to the two, two-track trails across the Ganoung and Mason property. However, the District Court concluded that only the western roadway was reasonable and necessary for the Stiles to access their property. The District Court held that the Stiles' request to expand the easements to sixty feet to allow development of a subdivision on their property was not reasonable, convenient for the purpose for which the easement was created, not historically supported, and "revolutionary" rather than "evolutionary." The

8

District Court found the western roadway would not be sufficient should the Stiles build a residence on their property and concluded, in that event, the Stiles could build a fenced-off, twenty-foot wide, improved, expanded, all-weather road at the Stiles' expense based on Ganoung and Mason's judicial admission that they would allow it.

¶18    Ganoung and Mason argue the District Court correctly determined the extent and scope of Stiles' easement, which entitled the Stiles to only one access, on the western two-track trail, from Highway 287 across the Ganoung and Mason property.  Ganoung and Mason rely on *Guthrie* to support the District Court's conclusion that: (1) the easement should be only what is reasonably necessary and convenient in light of the easement's intended purpose; and (2) the easement should not be different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created.  *See Guthrie*, 305 Mont. 367, 28 P.3d 467.

¶19    The Stiles argue the District Court incorrectly interpreted the law by concluding the Stiles are only entitled to one of the roadways that existed at the time the easement was granted.  The Stiles rely on *Ponderosa*, ¶ 27, to argue that when an easement is reserved without designating a location, and roads exist at the time of the reservation, the Court should treat the roads as the easement that the parties contemplated.  Therefore, the Stiles contend they are entitled to access easements on both roadways because both existed and were used at the time of the conveyances.  The Stiles also contend that if the grantor, Mary, desired to limit the Stiles' access to one roadway, she would have done so in the conveyances.  *See Clark*, ¶ 27.  We agree.

¶20 We rely on historical use to determine the location of an express easement when the grant fails to adequately define the location and scope. *Ponderosa*, ¶ 16. The historical use as an exercise of the express easement right fixes that right and limits it to that particular course or manner. *Strahan*, 237 Mont. at 268, 773 P.2d at 720. The record establishes that both of the two-track roadways existed when Mary divided the property and conveyed it to her children. The Stiles used both roadways to access their property; and, by placing gates in the fence at each location, did not prevent continuing access on both roadways. Thus, the District Court erred when it concluded the Stiles are only entitled to the western roadway.

¶21 The District Court correctly held the Stiles' request for two easements sixty feet in width to allow for development of a subdivision is not historically supported, not reasonable or convenient for the purpose for which the easements were created, and would be "revolutionary" not "evolutionary." *See Guthrie*, ¶ 48.

¶22 The Stiles' easement entitles them to use of the two established two-track roadways, in a manner consistent with their historical use.

¶23 *Issue Two: Whether the District Court erred by requiring the Stiles to pay the cost of fencing a new road on Ganoung and Mason's property if the Stiles choose to relocate the easement.*

¶24 The District Court determined that the existing western roadway would be insufficient should the Stiles choose to build a residence on their property.[2] However,

---

[2] It is unclear what, if any, impact our holding that the Stiles easement includes both of the two-track roadways may have on the necessity to construct an easement in a new location should the Stiles decide to build a home on their property.

based on what it considered to be judicial admissions of both Ganoung and Mason, the District Court concluded that the Stiles would be allowed to construct "a twenty (20) foot wide, improved, expanded, all-weather road should it be built by the [Stiles] at their cost, fenced off, that would travel along the west side of [Ganoung and Mason's] property."

¶25 The Stiles argue that the District Court erred in requiring them to pay the cost of fencing a relocated easement, because their easement has never been fenced. Their argument is misplaced. What the District Court held is that should the Stiles decide to build a residence on their property, they may construct what is effectively an entirely new easement, in a new location, for an entirely new purpose, and for which there is no historical basis and, thus, no legal basis. The basis for the District Court's holding is Ganoung and Mason's judicial admission that they would allow the construction of such an easement, subject to certain conditions, including that the easement be fenced off at Stiles' expense. A judicial admission is not a smorgasbord—it must be taken as a whole. If Stiles do not want to fence a new relocated easement, they are not required to construct a new relocated easement.

¶26 *Issue Three: Whether the District Court erred by not defining the location and scope of Ganoung and Mason's easement across the Stiles property.*

¶27 The Stiles contend the District Court erred by failing to determine the location and scope of Ganoung and Mason's easement across Stiles' property. Ganoung and Mason respond that this issue was not disputed at trial. We agree. The Pre-Trial Order executed by all parties and the Court, identifies the issues of fact and law that the parties contended were to be litigated at trial. All of the disputed issues pertained to the Stiles' easement

11

across the Ganoung and Mason property. The issue of the Ganoung and Mason easement across the Stiles property was not listed and neither party moved the District Court to amend the Pre-Trial Order to include the Ganoung and Mason easement as an issue.

¶28 The pretrial order supersedes the pleadings, states the issues to be tried, and controls the subsequent course of the action. *Craig v. Shell*, 1999 MT 40, ¶ 44, 293 Mont. 323, 975 P.2d 820. The purpose of the pretrial order is to prevent surprise, simplify the issues, and permit the parties to prepare for trial. *Nentwig v. United Indus.*, 256 Mont. 134, 138-39, 845 P.2d 99, 102 (1992). Failure to raise an issue in the pretrial order may result in a waiver. *Nentwig*, 256 Mont. at 138, 845 P.2d at 102 (quoting *Bache v. Gilden*, 252 Mont. 178, 181-82, 827 P.2d 817, 819 (1992)). Although we have held a pretrial order should be liberally construed to permit any issues at trial that are "embraced within its language," the theory or issue must be at least implicitly included in the pretrial order. *Nentwig*, 256 Mont. at 138-39, 845 P.2d at 102. Here, the parties' dispute focused on the location, width, and scope of the Stiles easement across the Ganoung and Mason property. We will not hold a District Court in error for failing to address an issue that was not presented to it.

**CONCLUSION**

¶29 The District Court correctly determined the location and scope of the Stiles easement. However, the District Court erred by limiting the Stiles easement to the western roadway only. The Stiles are entitled to use both two-track roadways consistent with their historical use. The District Court did not err by requiring the Stiles to pay for fencing a new road should the Stiles choose to relocate their easement. The District

12

Court did not err in failing to determine the location, width, and scope of the Ganoung and Mason easement across the Stiles property because neither party identified this as a disputed issue before the District Court.  Affirmed in part and reversed in part.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JIM RICE