FILED

04/03/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0223

DA 17-0223

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 68

QUARTER CIRCLE JP RANCH, LLC;
WALLY PAPEZ and ARETTA PAPEZ,

Plaintiffs and Appellants,

v.

BARBARA JERDE,

Defendant, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 14-67
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jacqueline R. Papez, Lee Bruner, Doney Crowley, P.C., Helena, Montana

For Appellee:

Daniel G. Gillispie, Attorney at Law, Billings, Montana

Submitted on Briefs:  January 24, 2018

Decided:  April 3, 2018

Filed:

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Wally Papez, Aretta Papez and Quarter Circle JP Ranch, LLC (collectively "Quarter Circle") appeal from the February 2, 2017 Order on Cross Motions for Partial Summary Judgment and the June 10, 2016 Order on Plaintiffs' Motion for Summary Adjudication entered by the Twenty-Second Judicial District Court, Carbon County. Barbara Jerde cross-appeals. We affirm in part and reverse in part, addressing the following issues:

1. *Did the District Court err by concluding a road easement "for the purpose of conducting farming and ranching operations and activities" was specific in nature and unambiguously included residential use?*

2. *Did the District Court err by concluding the easement did not also provide access to adjacent after-acquired property?*

3. *Did the District Court err by denying joinder of the owner of the after-acquired property to the litigation?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In 1988, John Papez, James and Phyllis Hoskin, Lorraine Lindblad, and Clifford Helt entered a "Mutual Grant of Access Easement," wherein they, as "Grantors-Grantees," granted access over an "existing trail or roadway," as follows:

A non-exclusive access easement over and across the above-described lands *on the existing trail or roadway* for ingress and egress to and from adjoining properties owned by the respective Grantors/Grantees *for the purpose of conducting farming and ranching operations and activities*, together with the right to repair and maintain the same in the condition it now exists at each party's own respective cost and expense, and to provide access to the parties hereto along this existing trail running from N1/2S1/2, Sec. 33-6S-22E, M.P.M., to the county road running along the South side of Sec. 9-7S-22E, M.P.M. [Emphasis added.]

2

Quarter Circle is the successor-in-interest to the properties previously owned by John Papez and James and Phillis Hoskin (Papez Property). Jerde is successor-in-interest to the property previously owned by Lorraine Lindblad (Jerde Record Property). Jerde also purports to be an unrecorded contract purchaser of other real property abutting the Jerde Record Property (Jerde Contract Property). The Papez Property and the Jerde Record Property are burdened and benefitted, respectively, by the easement. The Jerde Contract Property was not owned by any party to the access easement at the time of execution in 1988.

¶3     In 2009, Jerde moved a fifth-wheel trailer onto the Jerde Record Property and began using it as a residence. She also constructed a shed and kept horses on the property. When the trail/roadway became difficult to use, Jerde departed from the road and traveled across other land owned by Quarter Circle. Jerde also used the road to access the Jerde Contract Property.

¶4     Quarter Circle filed a complaint, seeking declaratory relief that Jerde, in Counts I-III: (1) improperly deviated from the easement onto Quarter Circle's unburdened property; (2) used the easement to access certain property not benefitted by the easement; and (3) used the easement for residential purposes that were not contemplated by the easement. Quarter Circle sought summary judgment, and on June 10, 2016, the District Court granted the motion on Count I. Jerde acknowledged deviating from the trail/road subject to the easement when it became impassible or flooded, and the District Court concluded that the language of the easement unambiguously limited Jerde's passage to the

3

trail/road alone, and not over Quarter Circle's other land. The District Court also granted summary judgment to Quarter Circle on Count II, concluding the language of the easement unambiguously granted access to the trail/road only "to and from adjoining properties owned by the respective Grantors/Grantees," and thus Jerde's use of the easement to access the Jerde Contract Property, which was not owned by any of the original grantors or grantees at the time of the grant, was prohibited. The District Court denied summary judgment as to Count III, reasoning that:

> *[T]here is a material issue of fact relative to whether the scope of the Easement for 'farming and ranching operations and activities' properly includes residential purposes.* The record is not entirely clear as to how the Easement has been historically used, whether the original grantors/grantees contemplated use of the Easement for residential purposes related to farming and ranching, and whether Jerde's use of the Easement is incompatible with the purposes established in the grant of the Easement . . . [T]he Court finds it prudent to allow the parties to clarify for the Court whether the original parties to the Easement contemplated the use of the road/trial for residential purposes related to farming and ranching on the Jerde Record Property [Emphasis added.]

¶5 After further record development, the parties both filed motions for summary judgment, supported by affidavits. On February 2, 2017, the District Court granted summary judgment to Jerde on Count III, concluding the language in the easement granting access for "the purpose of conducting farming and ranching operations and activities" was specific in nature and "clear and unambiguous as to its scope," and that it included residential use. In support of its conclusion, the District Court referenced dictionary definitions, including the definition of a "farm" as "[l]and and connected buildings used for agricultural purposes" (*citing* Black's Law Dictionary 638 (8th Ed. 2004). The court

4

also provided its observations of customary use and practice on such properties, stating that, "[i]n Montana, it is frequently necessary or desirable for farmers or ranchers to have residences on their farms or ranches that are an integral part of their farming or ranching operations[,]" and noting that such a residence is commonly described as a "farm house" or "ranch house." The District Court reasoned that "the dictionary definition of 'farm' together with the often practical necessity for a farmer or rancher to physically reside near the other operations of the farm or ranch, establish that a farm or ranch house is, in many instances, a necessary and accepted part of 'farming and ranching operations and activities,'" and thus concluded that the language of the easement unambiguously included a residence. Quarter Circle appeals this issue.

¶6 In response to Count II of the complaint, Jerde sought to establish that the easement included use of the trail/road to access the after-acquired Jerde Contract Property. She moved for joinder of Donna Riley, the record owner of this property, arguing that the easement claims could not be properly adjudicated without Riley. The District Court denied the motion, reasoning that Riley was not a party to or successor-in-interest to the easement, and thus had no interest in the litigation. The District Court thereafter granted summary judgment to Quarter Circle on Count II, holding that the easement unambiguously limited the access grant to the 1988 signatories, and the grant was not intended to benefit the contiguous properties of those who owned property along the easement. Jerde cross-appeals the court's disposition of Count II, including the denial of joinder of Riley.

5

## STANDARD OF REVIEW

¶7     We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Bird v. Cascade Cnty.*, 2016 MT 345, ¶ 9, 386 Mont. 69, 386 P.3d 602. We review a district court's conclusions of law to determine whether they are correct. *Pilgeram*, ¶ 9.

## DISCUSSION

¶8     *1. Did the District Court err by concluding a road easement "for the purpose of conducting farming and ranching operations and activities" was specific in nature and unambiguously included residential use?*

¶9     Quarter Circle argues that, by initially determining that there was a material question of fact regarding the scope of the easement, and soliciting evidence to establish the original intent of the grantors/grantees, the District Court implicitly found the easement was general in nature. Quarter Circle argues that the District Court erred by later concluding that the easement was specific, or "clear and unambiguous as to its scope," and ignoring the evidence of historic use, the parties' intent, and the circumstances surrounding the easement at its inception. Quarter Circle argues neither the language of the easement nor the evidence of historical use contemplates residential use of Jerde's property. In answer, Jerde argues the District Court did not err because a grant of access for "farming and ranching operations and activities" unambiguously includes residential use, noting that the

6

dictionary definition of "farm" encompasses "a very broad swath of activity, including residing on the farm or ranch property." Jerde avers in her affidavit that the property had previously been used for residential purposes, and argues that farming and ranching "necessarily includes the right to live on the property because it is so essential to the successful operation of a ranch."

¶10 "Where an easement is specific in nature, the breadth and scope of the easement are strictly determined by the actual terms of the grant." *Mason v. Garrison*, 2000 MT 78, ¶ 21, 299 Mont. 142, 998 P.2d 531 (citations omitted); *see also* § 70-17-106, MCA "[t]he extent of a servitude is determined by the terms of the grant. . . ." Stated differently, if the grant "is specific in its terms, it is decisive of the limits of the easement." *Mason*, ¶ 21 (citations omitted). "[I]t is not the proper role of the judiciary to insert modifying language into clearly written and unambiguous instruments where the parties to the instrument declined to do so." *Creveling v. Ingold*, 2006 MT 57, ¶ 12, 331 Mont. 322, 132 P.3d 531; *see also* § 1-4-101, MCA (the judge is "not to insert what has been omitted or to omit what has been inserted.")

¶11 Where an easement is general in its terms, "courts must look beyond the language of the deed in determining the breadth and scope of the servitude, which need only be such as is reasonably necessary and convenient for the purpose for which the easement was created." *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 17, 352 Mont. 212, 215 P.3d 675 (*citing Guthrie v. Hardy*, 2001 MT 122, ¶ 47, 305 Mont. 367, 28 P.3d 467). To define the breadth and scope of a servitude of a general easement, a court considers "the situation of

7

the property, surrounding circumstances, and historical use[.]" *Ganoung v. Stiles*, 2017 MT 176, ¶ 15, 388 Mont. 152, 398 P.3d 282. Further, we have consistently held that "in the absence of clear specifications defining scope, no use may be made of a right-of-way different from the use established at the time of the creation of the easement so as to burden the servient estate to a greater extent than was contemplated at the time the easement was created." *Guthrie*, ¶ 48.

¶12     The language of the easement here contains no express language indicating whether the parties intended the trail/road to be used to support residential use of the property. Further, the phrase granting access over the trail/road "for the purpose of conducting farming and ranching operations and activities" is not further defined to include or exclude residential purposes. Because use of the trail/road for residential purposes is not "strictly determined by the actual terms of the grant," *Mason*, ¶ 21, the easement is not "specific" for purposes of this particular question.

¶13     Because the District Court reached the contrary conclusion that the easement was specific and unambiguous, it refused to consider evidence of the circumstances and historical intent, reasoning that "surrounding circumstances may not be considered once the court has determined that the instrument is unambiguous." Instead, it resolved the uncertainty in the easement's language by turning to non-record information, including dictionary definitions and its own observations about Montana farms and ranches. For example, the court stated that "[i]n Montana, it is *frequently necessary or desirable* for farmers or ranchers to have residences"; that, "*in many instances*," a necessary and

8

accepted part of farming and ranching is having a "farm or ranch house"; and a residence "*may well serve* as part of" a farming or ranching operation (emphasis added). These customs and observations may well be true, but the District Court drew them from its own experience, and not from the record in this case. More importantly, what may be necessary "in many instances," what is "desirable," or what "may well serve" a farming or ranching operation cannot displace the proper inquiry—to determine "the purpose for which the easement was created." *Mattson*, ¶ 17; *see* § 1-4-103, MCA ("In the construction of an instrument, the intention of the parties is to be pursued if possible."); *see also Restatement (Third) of Property: Servitudes* § 4.1 ("A servitude should be interpreted to give effect to the intention of the parties. . . ."). Further, while consultation of dictionaries can be helpful in correctly applying a word or term,[1] here the District Court relied upon dictionary definitions to the exclusion of evidence the parties had offered of the historic use and intent behind the easement's creation.

¶14 For these reasons, we conclude the District Court erred in determining that the easement was specific upon this question—that is, whether use of the trail/road to support residential purposes is encompassed by the grant—and by refusing to consider the parties' historical evidence. The language in the easement regarding the residence question is general in nature and ambiguous, which the District Court originally recognized when it

---

[1] *See Mattson* ¶ 35 (when an easement was executed 50-70 years prior and no original signatories were available to establish the intent of the parties at the time of contracting, dictionaries used "at the time the easement contracts were executed" were consulted to define terms such as "flood" and "subirrigate," and thereby determine the extent of the grant).

9

solicited extrinsic evidence from the parties to establish historical use and intent. On this question, the parties have submitted materially conflicting evidence. James Hoskins, an original signatory to the easement, stated that the property had been used for seasonal grazing only and that no residences were required for seasonal grazing lands "because you don't need to be there. You don't winter there, generally. You can't put up any hay there, so there would be no reason to have a building there." On the other hand, Barbara Jerde averred that "I am aware that this property has been used for a residence in the past as when I purchased the property from the Lindblads, the descendants of the original homesteaders, Lauraine Lindblad was kind enough to give me a book relating to the history of the property and included many pictures of the homestead built there. . . ." She further averred "[Quarter Circle] ignores the fact that in order to use the property for farming and ranching operations and activities, it is necessary to also maintain a residence. . . . There are numerous circumstances for which it is necessary to live on the ranch property in order to properly care for the animals." These and other averments establish conflicts in material facts, resolution of which will determine the outcome, and, therefore, this issue was not appropriate for resolution by summary judgment.[2]

---

[2] The District Court's error in concluding the easement was specific on the residence issue in Count III does not undermine its conclusion that the easement was specific with respect to the issues raised in Counts I and II. *See*, *e.g.*, *Mason*, ¶¶ 20-24 (finding two "separate but related" easements within a single grant and further delineating between specific and general portions). As discussed below, the District Court correctly concluded that the easement is specific regarding passage upon the trail/road, i.e., that the easement unambiguously granted access only upon the "existing trail or roadway," and not over other property. Further, the District Court correctly concluded the easement unambiguously granted access over the trail/road only "to and from adjoining properties owned by the respective Grantors/Grantees," thus prohibiting Jerde's use of the trail/road to access the Jerde Contract Property.

¶15    We conclude the District Court erred by granting summary judgment to Jerde on Count III of Quarter Circle's complaint. A trial will permit consideration of "the situation of the property, surrounding circumstances, and historical use," *Ganoung*, ¶ 15, to determine the breadth and scope of the easement. Therefore, we remand for further proceedings to properly determine the extent of the scope of the grant.

¶16    *2. Did the District Court err by concluding the easement grant did not provide access to after-acquired property?*

¶17    On cross appeal, Jerde argues the Jerde Contract Property, as an adjacent property to the Jerde Record Property, should be included in the easement grant because the grant "does not unambiguously foreclose the possibility of benefiting after-acquired property." Jerde explains she is "not arguing that there is a legal principle that after-acquired adjacent parcel is automatically benefitted by the same easement used to access the primary parcel," because *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 432, 916 P.2d 751, 758 (1996), confirms "this is not the law." Rather, Jerde contends that the language of the grant is open to "at least two reasonable interpretations[,]" arguing the language referencing the described lands as "owned by the respective Grantors/Grantees" could be interpreted as "owned <u>at any time</u> by the respective Grantors/Grantees." Quarter Circle argues the District Court did not err because the Jerde Contract Property is not described or otherwise mentioned in the easement and was not a property owned by any Grantors/Grantees at the time of the creation of the easement.

¶18    We conclude the District Court did not err in holding the easement included only the original signatories and their successors-in-interests, and applied only to the described

11

lands of the Grantors/Grantees.  If an easement grant "is specific in its terms, it is decisive of the limits of the easement."  *Mason*, ¶ 21.  Here, the easement language is specific regarding the subject properties and their owners.  The easement indicated the agreement was between "the undersigned Grantors-Grantees" (listing John Papez, James Hoskin, Lorraine Lindblad, and Clifford Helt and describing their respective lands), granted "unto each other" the described easement, provided "access to the parties hereto" on the existing road, and stated the easement "shall be for the benefit and use of the respective owners of adjacent lands described above, their heirs, successors, and assigns . . . ."  No language lent itself to an interpretation that the easement could be applied to lands owned "at any time" by the Grantors/Grantees.  Such an interpretation would cast a broad application of the easement that could not have been known or foreseen at the time of its creation.  Even assuming *arguendo* that Jerde's interpretation of language could support her position, it cannot be read in isolation.  *See* §§ 1-4-101, 28-3-202, MCA.  As a whole, the grant unambiguously and explicitly specifies that the easement is only for the described parties, the described lands, and for successors-in-interests to the described lands.  Unlike the Jerde Record Property, the Jerde Contract Property was not owned by any of the original signatories nor was it a described land in the easement grant.  Therefore, the District Court did not err in concluding the Jerde Contract Property was not subject to the easement.

¶19    *3.  Did the District Court err by not joining the owner of adjacent after-acquired property to the easement to the litigation?*

¶20    On cross appeal, Jerde argues the District Court abused its discretion by not joining Donna Riley, the record owner of the Jerde Contract Property, to the litigation as a

12

necessary party. Quarter Circle answers that neither the Jerde Contract Property nor Riley is subject to the easement.[3] The District Court denied Jerde's motion to join Riley to the litigation because: (1) Jerde failed to file a supporting brief with her motion; (2) Jerde's motion contained only unsworn and unsupported factual allegations; and (3) Riley was not a party to the easement or successor-in-interest to any party in the easement, thus she was not an indispensable party under M. R. Civ. P. 19.

¶21 The District Court did not err by refusing joinder of Riley as a necessary party. Filed without a brief, Jerde's motion itself contained unsworn and unsupported allegations, and was insufficient to establish the merits of her request. Further, the District Court did not err in determining that Riley was not an indispensable party subject to joinder. A person subject to service must be joined as a party if "in that person's absence, the court cannot accord complete relief among existing parties[.]" M. R. Civ. P. 19(a)(1)(A). Here, the easement specified the Grantors/Grantees, and Riley was neither a party to the easement nor a successor-in-interest to any party to the easement. The District Court did not err in denying Jerde's motion.

---

[3] Quarter Circle alternatively argues that because Jerde did not reference the District Court's January 25, 2016 Order Denying Motion to Join Defendants in her Notice of Appeal, this Court should not consider the issue. However, Jerde appealed the "final judgment or order" from which the appeal is taken and is not required to appeal previous orders. *See* M. R. App. P. 4(4)(a) ("[A]n appeal from a judgment draws into question all previous orders and rulings excepted or objected to which led up to and resulted in the judgment.").

¶22     For the reasons stated above, we reverse and remand to the District Court for further proceedings consistent with this opinion.    We affirm the District Court's holdings on Counts I and II.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR