FILED

12/31/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0026

DA 24-0026

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 322

JAMES G. ARCHER, DENISE F. ARCHER,
ROGER WAGNER, ANTOINETTE WAGNER,
RUTGER NIERS, LAURA NIERS, GREGORY
CHAPMAN, GREGORY SMITH, and LISA BRYANT,

        Plaintiffs and Appellants,

    v.

GORDON TAIT and MICHELLE JANZ,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                   In and For the County of Flathead, Cause No. DV-2023-640E
                   Honorable Danni Coffman, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Sean S. Frampton, Frampton Purdy Law Firm, Whitefish, Montana

        For Appellees:

                Bruce A. Fredrickson, Angela M. LeDuc, Taylor R. Miller, Rocky
                Mountain Law Partners, P.C., Kalispell, Montana

                         Submitted on Briefs:  September 4, 2024

                               Decided:  December 31, 2024

Filed:

                        _____
                                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellees Gordon Tait and Michelle Janz plan to construct a residence at the base of their property, adjacent to Whitefish Lake. The proposed ingress and egress for Appellees' proposed home is a narrow dirt roadway that crosses the Appellees' and Appellants' lots as part of an express easement providing all lot owners with use of the roadway, which also allows more convenient access to the lake's shore. Appellants challenged Appellees' proposed use of the road, contending the easement's original scope was limited to use only in the summer months for access to and enjoyment of the lake, not for regular travel to and from a residential property, and that their properties would be unduly burdened by the construction of Appellees' home. The Eleventh Judicial District Court, Flathead County, held for Appellees, determining the easement's grant language was specific and would not prohibit Appellees' intended year-round use of the road. This appeal followed.

¶2 We address the following issue:

*Did the District Court err by determining the subject easement was specific as to year-round road use and granting summary judgment to Appellees?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The Parties to this case each own one or more lots within the Houston Lake Shores Tracts residential subdivision, which borders Whitefish Lake. The lots are narrow and steep as they slope to the lake's shoreline; existing residential properties are located at the top of each lot. A dirt road traverses the lots, beginning on the Appellees' property, then

2

proceeding down and across the Appellants' properties before sharply switching back and re-crossing Appellants' properties, eventually ending at the base of the Appellees' lot. The dirt road pre-dates the subdivision, which was platted in 1935. In 1986, the then-owners of each affected lot entered a "Multiple Reciprocal Grants of Easements" (hereinafter, the "Easement") for the road, providing, in relevant part:

1. The parties do hereby grant unto each other a ten foot (10') easement and right of way to use and maintain the present existing private road, for motor vehicle traffic in common with each other, traversing through their respective tracts of land as shown, drawn and laid out in Exhibit "G", attached hereto, to have and to hold the same unto the respective parties as appurtenant to their lands.
2. The parties hereto agree to share equally in the costs of expenses of maintenance and repairs of said private road as needed, but only for summer-time use, which shall not include snow and ice removal.
3. The easements hereby granted shall run with the land and shall inure to the benefit of, and be binding upon, the parties hereto and their respective heirs . . . including, but without limitation, all subsequent owners of tracts described in Exhibit "A" through "F" and all persons claiming under them.

¶4     Appellants Roger and Antoinette Wagner are the only remaining property owners who were original parties to the Easement. All other Appellants are successors-in-interest to the original parties. The dirt road encompassed by the Easement has not been utilized to provide direct access to a residence. Rather, landowners have historically used the road to access storage sheds erected on their properties or to access stairways leading to their docks on the lake.

¶5     Gordon and Michelle purchased their property in September of 2020, subject to the Easement. Their current home and separate garage are located near the top of their lot, where the Easement begins. They intend to build a residence at the bottom of their lot,

3

closer to the shoreline, and convert their existing home into a guest house. The road, after traversing lots within the subdivision and terminating on the lower portion of their lot, would serve as the primary ingress and egress to their proposed home year-round.

¶6 Appellants objected to this plan, arguing the Easement limited use of the dirt road to "summer-time use" only, and filed suit to permanently enjoin Appellees from "any fulltime ingress-egress access" over the Easement, "including any use for construction equipment to improve the property." The Parties filed cross-motions for summary judgment. Relying on an Affidavit from Roger Wagner, one of the original parties to the Easement, Appellants stated "[t]he purpose of the easement agreement was to reduce to writing the existing and intended use of the roadway as access in the summertime to get to the stairs . . . never to access a residence or to use it year-round." However, based upon the language of the Easement, the District Court granted summary judgment to Appellees, reasoning:

> The language of this easement clearly creates a ten-foot roadway easement, the location of which is identified on the plat, for the benefit of the lot owners. The restriction Plaintiffs read into this, i.e., that paragraph two limits the use of the roadway to "summertime," or that one may not access a home only stairs, docks, and sheds, is not stated in the language of the easement. Instead, it appears to be contemplated that the roadway might be used in the winter, but that shared expenses do not include snow and ice removal. Had the drafter intended to limit use of the roadway to "summertime use," paragraph one would have limited the grant in this manner. In any event, this easement is specific, certainly as it relates to the question of whether use is limited to "summertime" or limits use of the roadway for lake, dock, stair, and shed access.

Appellants appeal from the District Court's summary judgment order.

4

## STANDARD OF REVIEW

¶7 We review a grant or denial of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the District Court. *Quarter Circle JP Ranch, LLC v. Jerde*, 2018 MT 68, ¶ 7, 391 Mont. 104, 414 P.3d 1277. Summary judgment is appropriate only when the moving party demonstrates both absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3). The District Court's conclusions and applications of law are reviewed de novo for correctness. *O'Keefe v. Mustang Ranches HOA*, 2019 MT 179, ¶ 14, 396 Mont. 454, 446 P.3d 509.

## DISCUSSION

¶8 Appellants argue the District Court erred in determining the scope of the Easement by failing to credit the original grantors' intent, particularly as recalled by Roger Wagner. In response, Appellees argue the Easement is unambiguous and clearly granted the parties continual use of the dirt road, the maintenance of which would be shared by the parties only during summer months. Like the District Court, we examine the Easement's language to determine whether it is necessary to consider parol evidence about the parties' original intentions to resolve the question of the Easement's scope.

¶9 "An easement is a nonpossessory interest in land—a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land." *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. Easements may be expressly created through a written instrument of conveyance, or a grant. *Sieben Ranch Co. v. Adams*, 2021 MT 172, ¶ 14, 404 Mont. 510, 494 P.3d 307 (citing *Kuhlman v. Rivera*,

5

216 Mont. 353, 359, 701 P.2d 982, 985 (1985)). "[T]he extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired." Section 70-17-106, MCA.

> This Court has recognized the easement-by-reference doctrine, where an express easement may be created by referring in an instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described. For an easement to be considered adequately described, the dominant and servient estates must be ascertainable with reasonable certainty from the transaction documents and the transaction documents must give the owner of the servient estate knowledge of its use or its necessity. The instrument of conveyance and the referenced plat or certificate of survey together must show clear and unambiguous grantor intent to convey an easement and must describe with reasonable certainty the intended dominant and servient estates, use, and location of the easement.

*Mary Ellen Duke Trust v. Lee Lou, LLC*, 2023 MT 177, ¶ 12, 413 Mont. 356, 535 P.3d 1133 (internal citations and quotations omitted).

¶10 An easement's terms may be specific or general with respect to the result of the grant. *Whary v. Plum Creek Timberlands, L.P.*, 2014 MT 71, ¶ 9, 374 Mont. 266, 320 P.3d 973. "Where an easement is specific in nature, the breadth and scope of the easement are strictly determined by the actual terms of the grant." *Mason v. Garrison*, 2000 MT 78, ¶ 21, 299 Mont. 142, 998 P.2d 531. In other words, if the grant is "specific in its terms it is decisive of the limits of the easement," and the judiciary must not attempt to modify language where the parties have clearly declined to do so. *Titeca v. State*, 194 Mont. 209, 214, 634 P.2d 1156, 1159 (1981) (internal quotations omitted); *Creveling v. Ingold*, 2006 MT 57, ¶ 12, 331 Mont. 322, 132 P.3d 531; *see also* § 1-4-101, MCA. However, if the granting language is general in nature, courts "look beyond the plain language of the grant

6

in defining the scope and breadth of the servitude." *Mason*, ¶ 22. Such extrinsic parol evidence "is not admissible to add to, vary, or contradict the terms of the contract." *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 18, 352 Mont. 212, 215 P.3d 675 (citing §§ 28-2-904, 28-2-905(1), 70-20-202(1), MCA).

¶11 In *Jerde*, a case heavily relied upon by the Appellants, we found an easement granted for "ingress and egress . . . for the purpose of conducting farming and ranching operations and activities" to be general as to whether it could support a residence. *Jerde*, ¶¶ 2, 14. There, we credited parol evidence from original easement signatories to establish historical use as necessary "[t]o define the breadth and scope of a servitude of a general easement." *Jerde*, ¶ 11. Yet, we also found the same easement to be specific regarding the parties and lands to which it was ascribed. *Jerde*, ¶ 18. Granting language, therefore, must be applied to the subject issue in determining whether an easement's scope is general or specific with respect to each issue. *Jerde*, n.2 ("The District Court's error in concluding the easement was specific on the residence issue in Count III does not undermine its conclusion that the easement was specific with respect to the issues raised in Counts I and II"); *Mason*, ¶¶ 20-24 (finding "separate but related" easements had specific and general applications).

¶12 The Easement across Appellants' and Appellees' properties is unambiguous as to whether use is limited to summertime. The road at issue is adequately described and incorporated by reference within the original agreement, showing the Easement's beginning and ending on Appellees' lot. The granting language in paragraph one explicitly

7

permits "motor vehicle traffic" across the "ten foot (10') easement and right of way," for use and maintenance of the existing dirt road. This language applies to all original parties to the Easement and runs with the land to "all subsequent owners of the tracts . . . and all persons claiming under them." The Easement shows a clear intent to convey and describes with reasonable certainty the dominant and servient estates, use, and location of the easement. This grant is not seasonally limited in any way, and, to that extent, we agree with the District Court that the succeeding paragraph does not serve to modify this grant. In paragraph two, the original signatories contemplated "costs of expenses of maintenance and repairs of said private road," and limited the sharing of such costs and expenses between neighbors to those incurred due to "summer-time use."

¶13     As the District Court reasoned, the original drafters of the Easement recognized the possibility the "roadway might be used in the winter, but that shared expenses [would] not include snow and ice removal." The District Court's interpretation squares with a logical understanding of the Easement's purpose to provide access to the lake. It would not be reasonable to read the grant such that Appellants would be precluded from accessing their storage sheds or docks on a warm day that occurred in April, outside of summertime. The grant cannot be read to restrict homeowners from enjoying access for recreational activities such as ice fishing but not others like kayaking, depending upon the season. If the drafters of the Easement had intended to impose such use limitations, it would appropriately have been addressed within the granting language of paragraph one, as the District Court noted. Similarly, the drafters could have limited the months or times in which the road could be

8

utilized, but they did not. It is not our role to look beyond the four corners of clear plain language to ascertain an intent to establish seasonal limitations that were not expressed in paragraph one. *Creveling*, ¶ 12. In this case, doing so would lead to a result that adds limitations not expressed in the document and take away from the Easement's original terms. The Easement, as written, does not exclude year-round use of the road.

¶14    Likewise, use of the road for the purpose of constructing Gordon and Michelle's proposed residence is not prohibited by the Easement's language. Houston Lake Shores Tracts is a residential subdivision, and it is to be reasonably expected that new or additional construction for residential purposes could occur on the lots, dependent upon permitting by requisite authorities. However, using the road for this purpose was not restricted by the Easement. "Except *as otherwise limited by the terms of the instruments of conveyance*, individuals entitled to use an express easement include the dominant estate owner[s], family, tenants, and *other expressly or implicitly authorized invitees*." *O'Keefe*, ¶ 29 (emphasis added). Here, the District Court found no material issues of fact to proscribe Gordon and Michelle's intended use of the Easement, stating: "Plaintiffs have not claimed that there is any limitation on the frequency of lake access, only that it be in the summertime. There are no provisions that limit any stakeholder in the way they enjoy the easement."

¶15    The question of whether construction will overburden the Easement is a factual issue that has not yet occurred and is not ripe for adjudication. A dominant estate overburdens the servitude when it causes unreasonable damage or interferes with the

servient property. *Mattson*, ¶ 52 (citing Restatement (Third) of Property § 4.10, cmt. h (Am. L. Inst. 1995)). The mere possibility this could occur is not a basis to reverse the District Court's judgment on the Easement's scope. As the District Court reasoned, "[e]ven if the Plaintiff's [sic] could argue real, present damages, this would likely be a disputed fact beyond the scope of summary judgement." Without further evidence in the record, we can only speculate as to what damage or interference, if any, the construction of Gordon and Michelle's home may cause to the Easement. Appellants suggest this Court ruled in *Guthrie v. Hardy*, 2001 MT 122, 305 Mont. 367, 28 P.3d 467 that "anticipated use by 'various construction and logging vehicles' and 'use of construction equipment on the easement road'" constitutes overburdening of an easement, but this argument fails to capture the facts of *Guthrie*. In that case, parties alleged Hardy had "actually increased his use of the road," performed "bulldozer work," and "damaged or interfered with property" in violation of a court-ordered injunction prohibiting Hardy "from performing 'any activities upon [the] easement except for access and egress.'" *Guthrie*, ¶¶ 15-17, 37. Based on these facts, this Court found an "equitable remedy was required to preserve [the Appellees'] right of use and enjoyment and maintain the status quo . . . ." *Guthrie*, ¶ 40. In contrast, there is no evidence here that such interference with the Easement has occurred. "The doctrine of ripeness 'requires an actual, present controversy,'" or else the "'court will not act when the legal issue raised is only hypothetical or the existence of a controversy merely speculative.'" *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 19, 333 Mont. 331, 142 P.3d 864 (quoting *Mont. Power Co. v. Public Service Comm.*, 2001 MT

10

102, ¶ 32, 305 Mont. 260, 26 P.3d 91). Consequently, we decline to address Appellants' concerns regarding overburdening of the Easement.

¶16 For these reasons, we find that the District Court did not err in determining the scope of the Easement was specific as to whether motor vehicle traffic was permitted and whether use was limited to the summertime, and did not prohibit Appellees' proposed use. Any claims that the use will ultimately unduly burden the Easement are presently non-justiciable.

¶17 We affirm.

/S/ JIM RICE

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON